PIRACCI CONSTRUCTION CO.,
INC., Plaintiff,

v.

SKIDMORE, OWINGS & MERRILL,
Defendant.

No. 76 Civ. 2941 (CHT).

United States District Court,
S. D. New York.

May 22, 1980.

Reid & Priest, New York City, for plaintiff; Louis H. Willenken, John M. Nonna, New York City, of counsel.

Christy & Viener, New York City, for defendant; Arthur H. Christy, Lansing R. Palmer, Wayne Charles Matus, New York City, of counsel.

## OPINION

TENNEY, District Judge.

■ Piracci Construction Co., Inc. ("Piracci") sued Skidmore, Owings & Merrill ("SOM") on three causes of action growing out of the construction of the Smithsonian Institution, Joseph H. Hirshhorn Museum and Sculpture Garden ("Museum") in Washington, D.C. SOM, an architectural and engineering firm, designed the museum, and Piracci built it, each under a separate contract with the General Services Administration of the United States ("GSA"). In its first cause of action, Piracci claimed that SOM injured it by negligently designing the Museum and thereby causing delays. In its second cause of action, it claimed that SOM injured it by willfully delaying the revision of the faulty design. In its third and final cause of action, Piracci claimed that "SOM, without reasonable justification knowingly and intentionally interfered with the contract between Piracci and the GSA by persuading the GSA to wrongfully reject the scale model of the [Museum] Project which Piracci built from SOM's designs," Complaint ¶ 16, and that after considerable delay and at additional cost, Piracci was required to build another scale model. By Memorandum and Order dated July 28, 1977 ("1977 Memorandum and Order"), the Court granted SOM's motion pursuant to Federal Rule of Civil Procedure ("Rule") 12(b) to dismiss the first two causes of action on the ground that Piracci had failed to pursue its contractual remedies. The Court denied the motion to dismiss the third cause of action. In doing so, the Court concluded that Piracci had sufficiently stated a cause of action for tortious interference with contractual relations. "[A] factual inquiry is needed to determine if the actions of SOM were permissible or if they exceeded the scope of its authorized power and discretion, and if they were intended to and succeeded in impeding Piracci's performance, thereby causing it to lose some of the benefits of its contract." 1977 Memorandum and Order at 12.

Piracci subsequently moved for summary judgment against SOM as to liability on the third cause of action and for an order specifying the facts that appear without substantial controversy. SOM cross-moved for summary judgment against Piracci on the grounds that the third cause of action is barred by the three-year statute of limitations and that, as a matter of law, Piracci has failed to offer evidence sufficient to sustain a claim for tortious interference with the contract between Piracci and the GSA. For the reasons stated below, the Court concludes that the third cause of action is barred by the applicable statute of limitations and that, accordingly, the complaint must be dismissed.

## BACKGROUND

Pursuant to its contract with the GSA, Piracci was required to produce a model of a portion of the Museum. Affidavit of Louis H. Willenken, sworn to February 21, 1979 ("Willenken Feb. Aff."), ¶ 5; Affidavit of Arthur H. Christy, sworn to April 4, 1979 ("Christy Apr. Aff."), ¶ 4. In April 1970, Piracci engaged Architectural Presentation Associates ("APA") to make the model. APA completed the model on May 1, 1970. Willenken Feb. Aff. ¶ 6; Christy Apr. Aff. ¶ 5. Soon thereafter, Piracci alleges, the parties began using the model as a visual aid. Willenken Feb. Aff. ¶¶ 7–9. During the summer of 1970, Piracci further alleges,

Universal Formclamp Co. ("Universal"), a formwork subcontractor, noted problems with SOM's contract drawings and so informed SOM. *Id.* ¶ 11. Allegedly in response to Universal's inquiries about the drawings, SOM began asking the GSA about the whereabouts of the model. *Id.* ¶ 12. SOM then asked the GSA to have the model sent to SOM for review. *Id.* ¶ 15. After reviewing the model, SOM determined that it did not comply with the applicable specifications. Christy Apr. Aff. ¶ 6. It so informed the GSA and requested that the model be resubmitted. *Id.*; Letter from Leon Moed of SOM to Joseph E. Smercak of the GSA, dated September 9, 1970, attached *id.* as Exh. A. The GSA then informed Piracci of various defects in the model and asked that it be resubmitted. Letter from Joseph E. Smercak to Piracci, dated September 15, 1970, attached as Exh. B to Christy Apr. Aff. The first model was resubmitted with corrections in November 1970; it was again rejected. Willenken Feb. Aff. ¶¶ 67–68; Christy Apr. Aff. ¶ 8. Piracci then retained Alexander, Jones & Teepe to make a second model. Willenken Feb. Aff. ¶ 69; Christy Apr. Aff. ¶ 8. In April 1971 SOM approved the second model. Willenken Feb. Aff. ¶ 100.

On May 12, 1971, Piracci made a formal claim against the GSA for the costs of delays to the Museum Project allegedly caused by the rejection of the model. The Contracting Officer at the GSA denied Piracci's request for compensation. Piracci appealed the decision to the GSA Board of Contract Appeals ("GSABCA"). Adminis-

trative Law Judge David W. Pelkey granted an equitable adjustment because the rejection had constituted a "constructive change" within the meaning of the contract. See 1977 Memorandum and Order at 10.[1]

*Statute of Limitations*

In its motion for summary judgment, SOM contends that Piracci's claim for intentional interference with its contract with the GSA is barred by the applicable three-year statute of limitations in N.Y.C.P.L.R. § 214(4). It contends that the cause of action, if it arose at all, accrued on September 9, 1970, the date on which SOM suggested that a revised model be submitted. The latest conceivable date on which any alleged interference could have occurred, SOM further alleges, was either in April 1971, when the GSA accepted the second model, or May 31, 1971, because Piracci's president allegedly admitted that no interference took place after that date.[2] Piracci commenced the action on July 1, 1976, more than five years after any of the above dates and more than two years after the statute of limitations expired.

Piracci agrees that section 214(4) (three years) governs this cause of action, but it argues that it commenced this action within three years after the cause of action accrued. It argues that the accrual date was not until the later of (1) the completion of the Museum in September 1974 or (2) the termination of administrative proceedings before the GSABCA on August 29, 1974.

---

1. Willenken, in his lengthy affidavits, makes numerous allegations of wrongdoing by SOM. Because the Court dismisses the third cause of action as barred by the statute of limitations, it sets out primarily those allegations necessary to a determination of the timeliness question.

2. *SOM sets out the following deposition testimony of John Rupp, former president of Piracci:*

Q. Would you say that Skidmore, Owings & Merrill did anything to interfere with the contract that was between GSA and Piracci Construction Co. after June 1, 1971?
[Mr. Willenken]: I'm sorry. I don't want to keep interrupting. Are you asking if there was an effect after June 1 or what?

[Mr. Christy]: Just so that we are clear; it's action not the effect; May 31, the end of May.
[Rupp]: No, I don't think there was any action after that that were in the same category as these that I am referring to.
Q. Let's be very clear. Is it your testimony that after May 31, 1971 Skidmore, Owings & Merrill did not do any action which would interfere with the contract between Piracci and GSA in connection with the GSA wrongfully rejecting the scale model?
[Rupp]: I would say so.
Rupp Deposition, Piracci Exh. 6* at 165.
Christy Apr. Aff. ¶ 17.

Asserting that the claim sounds in professional malpractice, it contends that the statute of limitations does not begin to run until the completion of construction. Piracci argues that a contrary rule would be unfair to the contractor who must work with and is dependent on the architect, would encourage multiple lawsuits, and would fail to recognize that the injury is a continuing one and that the full extent of damages remains unknown until the construction is completed.

Piracci argues alternatively that its cause of action for tortious interference with its GSA contract did not accrue until Piracci had pursued the administrative remedy mandated by the contract. It states that the Court concluded in its 1977 Memorandum and Order "that Piracci had pursued its administrative remedy on the third claim." Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Piracci's May 8 Mem.") at 6–7. Accordingly, it reasons, the cause of action did not accrue until the completion of the administrative proceedings on August 29, 1974. In support of this contention, Piracci states that "SOM is in privity with GSA and the cause of action for intentional interference is based on the same acts and occurrences as in the administrative proceeding." Piracci's May 8 Mem. at 8. It adds that Piracci would not have a claim against SOM if it had been fully compensated by the GSA and that damages from pursuing its administrative remedy would not even come into existence until completion of the administrative proceedings.

SOM replies that Piracci's cause of action is for intentional interference with a contract, and not for professional malpractice; accordingly, the "continuous treatment" reasoning does not apply. Moreover, it continues, the policy considerations underlying the "continuous treatment" doctrine are not applicable here: Piracci was not dependent on SOM as a client is on an architect, and the parties were not in a position of total trust and reliance. Secondly, SOM replies that Piracci's intentional interference cause of action arises under tort law, not under the Piracci-GSA contract. Accordingly,

there was no contractually mandated administrative remedy and no basis for tolling the statute of limitations. In any event, SOM continues, statutes of limitations are not tolled during administrative proceedings.

## DISCUSSION

In its 1977 Memorandum and Order at 11, the Court concluded:

[P]laintiff does appear to have a valid claim for the tortious interference with contractual relations even though the complaint does not denominate it as a tort claim. Such a claim does not arise under the Piracci/GSA contract and thus could be maintained against SOM in its individual capacity. One court has aptly explained that:

"The tort extends to cases in which performance of the contract is rendered more difficult or a party's enjoyment of the contract's benefits is lessened by the wrongdoer's actions. In New York, 'an unlawful interference with a person in the performance of his contract with a third party is just as much a legal wrong as is an unlawful inducement of a breach of that contract by the third party." *Goodall v. Columbia Ventures, Inc.*, 374 F.Supp. 1324, 1332 (S.D.N.Y. 1974), *quoting from Morris v. Blume*, 55 N.Y.S.2d 196, 199 (Sup.Ct., N.Y.Co.), *aff'd*, 269 App.Div. 832, 56 N.Y.S.2d 414 (1st Dep't 1945) (Footnotes omitted).

As the parties acknowledge, the statute of limitations for this tortious interference cause of action is three years under section 214(4) (for actions to recover damages for injury to property). *Van Dussen-Storto Motor Inn, Inc. v. Rochester Telephone Corp.*, 63 A.D.2d 244, 250, 407 N.Y.S.2d 287, 292 (4th Dep't 1978); *Williams v. Arpie*, 56 A.D.2d 689, 391 N.Y.S.2d 740 (3d Dep't 1977), *aff'd*, 44 N.Y.2d 689, 405 N.Y.S.2d 437, 376 N.E.2d 909 (1978); *Rolnick v. Rolnick*, 29 A.D.2d 987, 290 N.Y.S.2d 111 (2d Dep't 1968), *aff'd*, 24 N.Y.2d 805, 300 N.Y. S.2d 586, 248 N.E.2d 442 (1969). The parties disagree, however, as to when the cause

of action accrued. Piracci contends that it did not accrue until the Museum was completed or until the administrative proceedings were completed. SOM contends that the cause of action accrued, if at all, on September 9, 1970, when SOM suggested that a revised model be submitted, or, at the latest on May 31, 1971, two months after the GSA accepted the revised model and the last date, by Piracci's alleged admission, on which SOM could have injured Piracci.

■ The general rule in malpractice cases is that the cause of action accrues at the time of the wrongful conduct by the professional. *Schwartz v. Heyden Newport Chemical Corp.*, 12 N.Y.2d 212, 237 N.Y.S.2d 714, 188 N.E.2d 142, *modified,* 12 N.Y.2d 1073, 239 N.Y.S.2d 896, 190 N.E.2d 253, *cert. denied,* 374 U.S. 808, 83 S.Ct. 1697, 10 L.Ed.2d 1032 (1963); *Conklin v. Draper,* 254 N.Y. 620, 173 N.E. 892, *aff'g* 229 A.D. 227, 241 N.Y.S. 529 (1930). The one relevant exception to this general rule, the "continuing treatment" exception, provides that when the wrongful conduct was part of a course of treatment, the cause of action accrues when treatment is completed. *Borgia v. City of New York,* 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962). This exception was applied in a malpractice action against an architect, *County of Broome v. Vincent J. Smith, Inc.,* 78 Misc.2d 889, 358 N.Y.S.2d 998 (Sup.Ct.1974), and it has been applied in actions against other professionals. *See* 1 Weinstein-Korn-Miller, *New York Civil Practice* ¶ 214.22a, at 2–311 (1977). It has since been held that an owner's cause of action in malpractice against an architect accrues when the architect completes the buildings. *Sosnow v. Paul,* 36 N.Y.2d 780, 369 N.Y.S.2d 693, 330 N.E.2d 643 (1974); *Steiner v. Wenning,* 53 A.D.2d 437, 440, 386 N.Y.S.2d 429, 431 (2d Dep't 1976), *modified,* 43 N.Y.2d 831, 402 N.Y.S.2d 567, 373 N.E.2d 366 (1977) (accrual from the date the architect last rendered services).

■ The Court is thus faced with the question whether Piracci can take advantage of a 1974 accrual date, either based on a conclusion that the cause of action did not accrue until the Museum was completed or, to the same effect, under the "continuing treatment" principle. The Court concludes that even if the tortious interference cause of action is construed as one sounding in malpractice, the cause of action accrued, at the latest, in the spring of 1971. Accordingly, neither principle saves the cause of action against a statute of limitations defense.

■ SOM contends that neither of the accrual principles on which Piracci relies is applicable because the cause of action is grounded in an intentional tort, not in malpractice. Piracci responds that its action is based in architectural malpractice. In its 1977 Memorandum and Order, at 11, the Court concluded that "the plaintiff does appear to have a valid claim for the tortious interference with contractual relations even though the complaint does not denominate it as a tort claim." A party may not extend its time to sue by misdescribing its cause of action, *Kartiganer Assoc., P.C. v. Town of Newburgh,* 57 A.D.2d 857, 394 N.Y.S.2d 262 (2d Dep't 1977), but, on the other hand, in determining the applicability of statutes of limitations, New York courts "look for the reality, and the essence of the action and not its mere name," *Brick v. Cohn-Hall-Marx Co.,* 276 N.Y. 259, 264, 11 N.E.2d 902, 904 (1937), *quoted, e. g., in Kartiganer Assoc., P.C., supra,* 57 A.D.2d at 858, 394 N.Y.S.2d at 263.

Piracci relies partly on *Calabrese v. Bickley,* 208 Misc. 407, 143 N.Y.S.2d 846 (Sup.Ct. 1955), in arguing that its cause of action for intentional interference falls within the scope of the term "malpractice." In *Calabrese,* a patient and her husband sued a physician for failure to remove a gall bladder and for loss of the wife's services. The defendant moved to dismiss the causes of action on the ground that each was barred by the statute of limitations. The causes of action for malpractice were concededly untimely, and the motion to dismiss was granted as to them. The court allowed plaintiffs to replead as to the contract causes of action; possibly contract damages could be pleaded. Plaintiffs had also sued

for fraud. Causes of action stated in fraud would have been timely because they would have accrued at the time of discovery. In determining whether the causes of action did lie in fraud, rather than malpractice, the court stated:

As malpractice covers every way in which a patient is injured through the dereliction of a doctor in his professional capacity, the approach, depending on the facts, can be through any of several familiar forms of action. But no matter what the approach, it remains an action for malpractice, not one for deceit, contract or anything else. A well recognized ground for recovery is where a physician represents that he has the skill to perform a certain operation when in fact he does not. This form of action requires the same elements of proof that an action in fraud requires, yet it could not be successfully disputed that as between the two it is an action for malpractice. Where, as here, the fraud consists in concealing the malpractice, it has been held that the gravamen is the malpractice and the concealment merely an item in chain of circumstances causing the damage. *Tulloch v. Haselo*, 218 App.Div. 313, 218 N.Y.S. 139.

208 Misc. at 408–09, 143 N.Y.S.2d at 848. Based in part on *Calabrese*, Piracci contends that "malpractice includes every way in which an architest is derelict in its performance, whether intentionally or through negligence." Letter from Louis H. Willenken to the Court, dated June 1, 1979. In citing the case, Piracci indicates that *Calabrese* was modified on other grounds. In fact, however, a unanimous court allowed plaintiffs to replead their causes of action in fraud. 1 A.D.2d 874, 150 N.Y.S.2d 542 (1st Dep't 1956). This appellate decision undercuts the lower court's broad statement of the scope of the term "malpractice." *See Simcuski v. Saeli*, 44 N.Y.2d 442, 406 N.Y. S.2d 259, 377 N.E.2d 713 (1978).

In *Sears, Roebuck & Co. v. Enco Assoc., Inc.*, 43 N.Y.2d 389, 395, 401 N.Y.S.2d 767, 770, 372 N.E.2d 555 (1977), and *Paver & Wildfoerster v. Catholic High School Ass'n*, 38 N.Y.2d 669, 675, 382 N.Y.S.2d 22, 25, 345

N.E.2d 565, 568 (1976), the New York Court of Appeals stated that the New York personal injury cases addressing time limitation questions in the context of causes of action for both malpractice and intentional torts are, for reasons of differing policies, of questionable relevance in the context of purely property or pecuniary injury. In any event, the personal injury cases do not dispose of the question before the Court. *Compare Simcuski v. Saeli, supra*, 44 N.Y.2d at 451–52, 406 N.Y.S.2d at 264, 377 N.E.2d at 717 (plaintiff could establish an intentional tort, separate from and subsequent to the malpractice claim where defendant made subsequent, intentional misrepresentation) *with, e. g., Golia v. Health Ins. Plan*, 6 A.D.2d 884, 885, 177 N.Y.S.2d 550, 552 (2d Dep't 1958), *aff'd*, 7 N.Y.2d 931, 197 N.Y. S.2d 735, 165 N.E.2d 578 (1960) (causes of action purporting to be in contract and in fraud and deceit, "however labeled, . . . are nevertheless . . . to recover damages for malpractice, at least for time limitation purposes"; approved and distinguished in *Simcuski v. Saeli, supra*).

In short, it is unclear whether, under New York law, Piracci's tortious cause of action may be classified as a malpractice action for time limitations purposes. Considering both the tortious interference label and the proof Piracci offers to support the cause of action, the claim appears to combine allegations of a failure to exercise due care in providing information on which a model could be accurately prepared with a willful failure to correct information or otherwise provide sufficient information to Piracci or its model maker to complete, timely as well as accurately, a model of the Museum. The claim does not fit neatly under New York law also because the claim does not grow out of a Piracci-SOM contract or arise under a usual client-professional relationship. In general terms, however, the disputes arose from professional relationships based on contracts with the GSA. *See Sears, Roebuck & Co. v. Enco Assoc., Inc., supra*, 43 N.Y.2d at 395–96, 401 N.Y.S.2d at 770–71, 372 N.E.2d at 557–58. Rather than deciding this question on labels, the Court

will assume *arguendo* that the cause of action sounds, for time limitations purposes, in professional malpractice. Even so assuming, the rationale for the "continuing treatment" exception does not support a 1974 accrual.

*County of Broome v. Vincent J. Smith, Inc., supra*, first applied the exception to architects. The plaintiff sued the architect because leaks developed in the roof of a library designed for the plaintiff by the defendant. Defendant moved to dismiss on the ground of the statute of limitations. In determining whether to apply the "continuing treatment" exception to architects, the court reasoned as follows.

The considerations responsible for the application of this exception to the professions of medicine, law and accounting apply also to the profession of architecture. The architect creates and recommends plans to his client. These plans, conceived in his imagination, are proposed to the client as products of his education, experience and judgment. The client may offer suggestions to the architect, just as he might to his doctor, lawyer or accountant, but generally the client is required to rely almost totally on the professional advice of the architect. He must have confidence in the architect and place his full trust in him. Should problems or difficulties arise during the course of construction, the client, unknowledgeable as he is in matters of building design and construction, is forced to depend almost exclusively on the advice of the architect. As observed in *Borgia, supra* and later in *Siegel* [*v. Kranis*, 29 A.D.2d 477, 288 N.Y.S.2d 831 (2d Dep't 1968)], it would be unfair and unreasonable to require the client in this situation to question the tactics of the architect or to interrupt corrective efforts by the services of a summons and complaint.

As with the doctor, lawyer, or accountant, acts of malpractice by an architect may not be readily apparent to the client. To apply the general rule that a claim for malpractice accrues upon the occasion of negligence may serve to encourage the architect to conceal his errors for sufficient time so as to allow the statute of limitations to expire. Or, as alleged in this case, the application of the general rule may inadvertently work an injustice where the architect in good faith leads the client to believe that any damage or injury was caused by a contractor or material supplier, and while in pursuit of relief from that source the client's time to proceed against the architect elapses. Fairness and justice dictate that a cause of action of this nature accrue only after the professional relationship has been terminated so as to afford the client an opportunity, unhampered by possible concealment, delay or unintended misguidance by the architect, to discover any possible acts or omissions constituting malpractice.

78 Misc.2d at 892–93, 358 N.Y.S.2d at 1002–03. The defendant in *County of Broome* contended that even if the exception were applied to him as an architect, the action would still be untimely because he terminated his professional relationship with the plaintiff more than three years before the commencement of the action. The court found, however, that after the alleged termination of the relationship, the defendant engaged in extensive activity on the plaintiff's behalf to repair the leaking roof. The court concluded that it was "not unlikely" that this continuing activity lulled the plaintiff into waiting for correction of the problem rather than suing sooner. *Id.* at 893, 358 N.Y.S.2d at 1003.

Piracci argues that "[a]s the design professional, the architect is, as a practical matter, in the 'driver's seat' during a construction project. The contractor is dependent on the architect for complete and accurate contract drawings and cooperation throughout the course of the project." Piracci's May 8 Mem. at 4. The Court has no reason to doubt that a contractor is dependent on an architect in completing a building, and the Court may assume for purposes of this discussion that Piracci was dependent on SOM in completing the model. As a general proposition, however, a contractor

relies much less on an architect than does a lay client. More pertinent to the issue before the Court, Piracci was not dependent on the architect in discovering that it may have a claim. *County of Broome* speaks less in terms of dependence in completing a building than it does dependence in "discover[ing] any possible acts or omissions constituting malpractice." *See* quoted text *supra*. Any reliance Piracci placed in SOM regarding the discovery of problems with the model was dispelled in September 1970, when SOM suggested that a revised model be submitted. Piracci may have continued to rely on SOM for information to enable its model maker to complete the model, but that reliance became unnecessary in April 1971 when GSA accepted the second model.

Also in regard to the discovery of construction problems, Piracci did not need to place its full trust in SOM, as might a lay client. What trust Piracci had in SOM should not have kept it from suing SOM after the spring of 1971, at the latest.

The Court also concludes that after the acceptance of the second model it would not have been unreasonable or unfair to require Piracci to file suit. Piracci did question the tactics of SOM, and any concern about interrupting corrective efforts dissipated by the time the second model was accepted or soon thereafter.

In *County of Broome*, the court was also concerned about "injustice where the architect in good faith leads the client to believe that any damage or injury was caused by a contractor or material supplier, and while in pursuit of relief from that source the client's time to proceed against the architect elapses." *See* quoted text *supra*. Piracci did pursue relief against the GSA. *See* Willenken Feb. Aff. ¶ 102. Piracci was not in the dark, however, about SOM's role in the model rejection. Piracci needed no opportunity after the rejection of the first model, or certainly after the acceptance of the second model, to discover the alleged acts and omissions on which Piracci bases its claim against SOM.

■ In short, the rationale of the "continuing treatment" exception, or of a more general principle that claims by owner-clients against architects should not accrue until the completion of buildings, does not support upholding this claim against a statute of limitations defense. The basis for the claim was apparent throughout the latter part of 1970 and the early part of 1971. Piracci's reliance on and trust in SOM, as well as any reluctance to sue, should have been dispelled during this period. Not only was the basis for the claim apparent, it was "discrete and complete" as of the spring of 1971. *See Davis v. City of New York*, 38 N.Y.2d 257, 260, 379 N.Y.S.2d 721, 724, 342 N.E.2d 516, 517 (1975). Piracci's argument that delay caused by the rejection of the model created a continuing injury does not avail it. The accrual date does not change on the theory that the alleged misconduct created continuing consequential damages. *Hanrihan v. Parker*, 19 Misc.2d 467, 192 N.Y.S.2d 2 (1959); *Hagan Corp. v. Medical Soc.*, 198 Misc. 207, 96 N.Y.S.2d 286 (Sup.Ct. 1950), *aff'd*, 279 A.D. 1058, 113 N.Y.S.2d 282 (1st Dep't 1952). *See also Bloomfield Bldg. Wreckers, Inc. v. City of Troy*, 41 N.Y.2d 1102, 396 N.Y.S.2d 359, 364 N.E.2d 1130 (1977).

■ As its second principal argument against the statute of limitations defense, Piracci contends that the claim did not accrue until it had pursued and completed the contractually mandated administrative remedy. The Court concluded in its 1977 Memorandum and Order, Piracci contends, that Piracci had pursued its administrative remedy on the claim based on the rejection of the scale model. "After having successfully asked this Court to dismiss two claims because Piracci did not exhaust its administrative remedy, SOM is now asking this Court to dismiss the third claim because Piracci did take the time necessary to pursue the contractually mandated administrative remedy on that claim." Willenken May Aff. ¶ 6.

In its 1977 Memorandum and Order, at 10–11, the Court stated:

The third cause of action charges that SOM interfered with Piracci's perform-

ance under the Piracci/GSA contract by wrongfully recommending the rejection of Piracci's scale model and thereby subjecting it to further delay and additional costs. On this claim Piracci has, in fact pursued the contractual remedies. Piracci submitted its claim to the Contracting Officer who denied its request for compensation. Piracci then appealed the decision. A trial was held before Administrative Law Judge David W. Pelkey of the GSA Board of Contract Appeals. The issues on the appeal were whether the scale model had been improperly rejected by the GSA and whether any compensable delay resulted from the rejection. Judge Pelkey ruled that the rejection was not improper but that since it had constituted a "constructive change" within the meaning of the contract, the appeal was granted to the extent of awarding an equitable adjustment. *See* GSBCA-3477 (May 30, 1974), annexed as Exhibit B to Affidavit of John Rupp, sworn to November 3, 1976.

Piracci, however, was dissatisfied with the rulings and recovery and therefore it chose to commence the instant litigation, asserting its claim for relief directly against SOM, which it perceived as the principle wrongdoer. Piracci is apparently still involved in litigation with the GSA. It cannot obtain additional relief by having this Court determine, de novo, the exact issue which has already been determined administratively. The fact that the instant claim is asserted against SOM rather than its principal, GSA, is irrelevant since "a plaintiff who has had the existence or extent of a wrong litigated in an action against the principal may not thereafter have the same matters litigated as to the agent." *Lundgren*

*v. Freeman, supra,* 307 F.2d at 116. *However, the plaintiff does appear to have a valid claim for the tortious interference with contractual relations even though the complaint does not denominate it as a tort claim. Such a claim does not arise under the Piracci/GSA contract and thus could be maintained against SOM in its individual capacity.*

(Emphasis added).

Because this remaining tort claim against SOM does not arise under the contract, no resort to any administrative remedy *against SOM* was necessary and Piracci could have commenced an action against SOM on this claim as early as 1970.[3] Accordingly, Piracci may not look to the 1974 completion date of the administrative proceedings against the GSA for an accrual date for the instant cause of action.[4]

## CONCLUSION

The Court concludes that Piracci's cause of action for tortious interference with its contractual relations with the GSA accrued at the latest in 1971. Piracci waited until 1976 to sue, long after the three-year statute of limitations had elapsed.

Accordingly, SOM's motion to dismiss Piracci's third, and only remaining, cause of action is granted and, therefore, the complaint is dismissed in its entirety.

Submit judgment on notice.

**3.** Because the instant claim does not arise under the contract, *Crown Coat Front Co. v. United States,* 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967), is inapplicable.

**4.** Piracci states that SOM did not rely on a statute of limitations defense in its initial motion to dismiss or its initial answer, "and although the allegation was made in an amended answer, the defense was not raised initially in

response to Piracci's motion for summary judgment." Willenken May Aff. ¶ 3. It also refers to an action commenced by SOM in the United States District Court for the District of Columbia. *Id.* ¶ 12. Piracci appears to make no argument, however, that the motion based on the statute of limitations defense was waived or that SOM should be estopped from making the motion.