**Richard QUINTANA, Plaintiff,**

v.

**Lawrence A. WIENER, Lawrence D. Wiener, Elizabeth M. Wiener, and Wiener Management, Defendants.**

**No. 88 Civ. 2088 (LLS).**

United States District Court, S.D. New York.

Jan. 8, 1989.

Richard Quintana, New York City, pro se.

Barbara E. Olk, Trief & Olk, New York City, for defendants.

OPINION and ORDER

STANTON, District Judge.

Richard Quintana, proceeding *pro se*, contends that defendants fraudulently arranged for certain apartments to be altered from rent controlled to rent stabilized status,[1] thereby charging him a higher rent than that allowed by law.

---

**1.** "Rent control" refers to provisions of the City Rent and Rehabilitation Law, appearing at Chapter 3 of Title 26 of the Administrative Code of the City of New York, while "rent stabilization" refers to provisions of the Rent Stabilization Law of 1969, appearing at Chapter 4 of

Defendants move to dismiss his claims, and for sanctions. Mr. Quintana moves to "discharge" defendants' counsel for perjury.

## FACTS

In July 1977 Mr. Quintana became the tenant of 425 East 51st Street, Apartment 7C. At that time Lawrence A. Wiener ("Mr. Wiener") owned the building. The lease Mr. Quintana and Mr. Wiener signed provided for rent at $750 per month for the first two years, and $775 per month for the third year. Mr. Quintana renewed his lease over the years, and as of June 1988 was paying $1,037.93 rent per month. Wiener Management, a Connecticut partnership of which Lawrence D. Wiener ("Lawrence") is the sole general partner, has owned the building since April 1982. Lawrence is Mr. Wiener's son.

Accepting the allegations in the amended complaint as true, Stephen Varro Jr. and Edith Varro lived in Apartment 7C until December 27, 1975. At that time their monthly rent was $228.20. On January 5, 1976 Mr. Wiener filed a Landlord's Report of Statutory Decontrol with the City of New York's Department of Rent and Housing Maintenance Office of Rent Control ("decontrol report"). (Amended Complaint, Exhibit D) The decontrol report names Bjorn Carlsson as the tenant of Apartment 7C as of January 1, 1976. Mr. Wiener had filed an earlier decontrol report on December 2, 1975, showing Bjorn Carlson [sic] as the tenant of Apartment 9B in the same building as of December 1, 1975. (*Id.*, Exhibit C)

Also annexed to the amended complaint are two leases. One is dated December 1, 1975 for Bjorn and Sally Carlsson. It shows them as the tenants of Apartment 9B in typewritten print, with "9B" crossed out and "to 7C 1/1/76" written in by hand. (*Id.*, Exhibit E). The second lease is dated December 10, 1975 for Alvin Zakin. It shows him as a tenant of Apartment 9B in typewritten print, with "to 7C 9/15/76" next to 9B written in by hand. (*Id.*, Exhibit F)

According to Mr. Quintana the leases and decontrol reports, which purport to show that Bjorn Carlsson was Apartment 7C's first rent stabilized tenant, are fraudulent because no one lived in Apartment 7C after the Varros moved out. Such conduct, he asserts, warrants that his apartment be treated as rent controlled rather than rent stabilized. If that were the case, Mr. Quintana argues that the "legal rent" for his apartment in 1977 would have been only $342.30 per month and would be only $466.96 today.

On March 23, 1984 Mr. Quintana filed a Tenant's Complaint of Rent Overcharges with the New York City Conciliation and Appeals Board ("CAB"). (Exhibit B, Defendant's Notice of Motion) In December 1985 the CAB ordered Mr. Wiener to refund $2,266.66 to Mr. Quintana. Both Mr. Wiener and Mr. Quintana filed petitions for administrative review of this decision with CAB's successor, the State of New York's Division of Housing and Community Renewal, Office of Rent Administration ("DHCR"). On January 24, 1987 DHCR found that

> there is no support for the tenant's claim that the owner submitted fraudulent rent records.... The record in this lease shows that the initial stabilized tenant, Carlsson, took occupancy pursuant to a lease commencing January 1, 1976 and expiring September 30, 1988 at a rent of $630.00 per month; that the next tenant, Zakin, took occupancy pursuant to a lease commencing October 1, 1976 and expiring September 30, 1977 at a rent of $650.00 per month ... (*Id.*, Exhibit D)

Based upon these rents and the applicable sections of the Rent Stabilization Law, the DHCR found that the CAB's order should be modified and that Mr. Wiener should pay Mr. Quintana $5,189.74.

On March 25, 1987 Mr. Quintana filed a petition in the Supreme Court of the State of New York for a judgment against the

---

Title 26 of the Administrative Code of the City of New York. Both Chapter 3 and 4 may be found at 65 McKinney's Unconsolidated Laws.

DHCR pursuant to N.Y.C.P.L.R. Article 78 (the "Article 78 proceeding"). (*Id.*, Exhibit E) Wiener Management intervened in May 1987. On March 4, 1988 the Honorable Bruce McM. Wright dismissed Mr. Quintana's petition, finding that "there was a rational basis for respondent's determination that there was no support in the record for the tenant's claim that the owner submitted fraudulent rent records." (Exhibit A, Affidavit of Richard Quintana, sworn to June 3, 1988) Mr. Justice Wright entered judgment on May 13, 1988. (Exhibit C, Affidavit of Barbara E. Olk, sworn to June 21, 1988)

Mr. Quintana commenced this action on March 25, 1988, alleging diversity jurisdiction and that defendants committed willful premeditated fraud to decontrol Apartment 7C from rent controlled status to rent stabilized status and seeking treble damages amounting to $202,389.12, punitive damages, and attorney's fees.

Defendants moved to dismiss on April 15, 1988 on the grounds that (1) this action is barred by the statute of limitations, (2) a prior action is "pending" in the Supreme Court, New York County, (3) the complaint fails to plead fraud with particularity as required by Fed.R.Civ.P. 9(b), and (4) the third and fourth causes of action, for punitive damages and attorney's fees, state desired remedies rather than substantive claims.

Mr. Quintana served an amended complaint on defendants on June 3, 1988. The amended complaint adds assertions of mail fraud and conspiracy, but its factual allegations are substantially identical to the first. Mr. Quintana also moved to "discharge" defendants' counsel and dismiss their motion on the grounds of perjury and its subornation by defendants' attorney.

On June 21, 1988 defendants moved for sanctions pursuant to Fed.R.Civ.P. 11. Defendants also ask that their motion to dismiss the original complaint be applied to the amended complaint.

For the reasons stated below, defendants' motion to dismiss the amended complaint is granted but their motion for sanctions is denied, and plaintiff's motion to discharge defendants' counsel and dismiss their motion is denied.

## DISCUSSION

### I. Statute of Limitations

Where jurisdiction is based upon diversity of the parties, 28 U.S.C. § 1332, federal courts apply the forum state's applicable statutes of limitations.[2]

"Under New York law, claims of fraud must be brought within two years from the time plaintiff discovered or could have discovered the fraud with the exercise of reasonable diligence, or within six years of the fraud itself—whichever is later." *Marathon Enterprises v. Feinberg*, 595 F.Supp. 368, 371 (S.D.N.Y.1984) (citing N.Y.C.P. L.R. §§ 203(f), 213(8) (McKinney Supp. 1984)).

■ Mr. Quintana's complaint is barred under either calculation. His complaints to the CAB in 1984 and to the DHCR in January 1986 show that he had discovered the alleged fraud well over two years before he filed this suit on March 25, 1988, and the fraud itself would necessarily have occurred in 1977 or before.[3] Mr. Quintana contends that he may sue for the rent overcharges dating back to March 25, 1982 (six years before he filed his complaint) because "certain wrongs are considered to be continuing wrongs, and the statute of limitations, therefore, runs from the commission of the last wrongful act." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion, p. 24) (emphasis deleted)

[F]or each and every day a new cause of action arises, in this case it is a continuous willful premeditated fraud and mail

---

**2.** Mr. Quintana is a citizen of New York, Elizabeth Wiener is a citizen of Washington, D.C., and Lawrence, Mr. Wiener and Wiener Management are citizens of Connecticut.

**3.** Although Mr. Quintana labels as fraudulent Mr. Wiener's acceptance of rent checks through early 1984 because he had transferred ownership of Apartment 7C to his son in 1982, that has nothing to do with the amount of rent he was charged.

fraud, conspiracy and coconspiracy across state lines by the actions of the defendants, and as a direct result in 1988, the plaintiff Richard Quintana is being overcharged $570.97 per month, the rent overcharge and the deliberate fraud involved in such rent overcharge on each specific day gives rise to a new set of facts and a new statute of limitations. (*Id.* at 17)

The "continuing wrong" doctrine, however, does not apply here. Mr. Quintana's allegations of fraud rest upon the documents Mr. Wiener filed in 1975 and 1976, and the monthly rent Mr. Wiener established in 1977. The subsequent rent payments Mr. Quintana made, if improper, amount only to damages stemming from this initial fraud. "The accrual date [for the statute of limitations] does not change on the theory that the alleged misconduct created continuing consequential damages." *Piracci Construction Co. v. Skidmore, Owings & Merrill*, 490 F.Supp. 314, 321 (S.D.N.Y.1980) (citations omitted), *aff'd*, 646 F.2d 562 (2d Cir.1981).

Mr. Quintana also raises the doctrine of estoppel, noting that if a defendant conceals from a plaintiff that the latter has a claim or if a plaintiff forgoes suit at a defendant's urging, a court may estop the defendant from raising a statute of limitations defense. However, Mr. Quintana's complaints to the CAB in 1984 and to the DHCR in January 1986 establish that he discovered the fraud over four years ago, and was not deterred from seeking redress.

## II. The Article 78 Proceeding

■ Affording Mr. Quintana's amended complaint a liberal reading, his claim could also be construed as one for rent overcharges. Under N.Y.C.P.L.R. § 213–a (McKinney 1988 Supp.), "An action on a residential rent overcharge shall be commenced within four years of such overcharge." Thus, although Mr. Quintana could not sue for any overcharges before March 1984, he might have a claim for overcharges paid since then.

Such a claim, however, is barred by the doctrine of res judicata which provides that

A valid, final judgment on the merits is a bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand. Such a judgment precludes the subsequent litigation both of issues actually decided in determining the claim asserted in the first actions and of issues that could have been raised in the adjudication of that claim.

*NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2d Cir.1983) (citations omitted). Res judicata requires (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) between the same parties, or their privies, (3) adjudicating the transactions. *In re Teltronics Services, Inc.*, 762 F.2d 185, 190 (2d Cir.1985).

Mr. Quintana does not dispute that a final judgment was entered in the Article 78 proceeding, nor that "[t]he full faith and credit clause of the Constitution of the United States requires a federal court to give the same preclusive effect to a state court judgment as would be given in the state in which it was rendered." *Davidson v. Capuano*, 792 F.2d 275, 277–78 (2d Cir. 1986) (citations omitted); *accord Sam & Mary Housing Corp. v. New York State*, 632 F.Supp. 1448, 1451 (S.D.N.Y.1986). But he argues that the Article 78 proceeding did not involve the same defendants, and was not an action for damages or a money judgment.

Whether the parties to both proceedings are the same is

[a] factual determination of substance, not mere form. Generally speaking, one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation. While often justified by the doctrine of privity, the theory underlying this general proposition is that the party bound is in substance the one whose interests were at stake in the prior litigation.

*Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir.) (citation omitted), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

Mr. Quintana was the plaintiff in both proceedings. The DHCR was a defendant and Wiener Management an intervenor in the Article 78 proceeding. Mr. Quintana names as defendants here those persons or entities which he believes own, or have owned in the past, Apartment 7C: Wiener Management; its sole general partner, Lawrence; Wiener Management's predecessor in interest, Mr. Wiener; and Elizabeth Wiener, previously a partner in Wiener Management. Because the central issue in the Article 78 proceeding with respect to Wiener Management was whether "the owner submitted fraudulent rent records to the DHCR," (Mar. 4, 1988 Memorandum Decision of Justice Wright, Exhibit A to Plaintiff's Notice of Motion, p. 2), defendants here are "those whose interests were at stake in the prior litigation."

As for the third requirement, "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first" are the factors which determine whether there is an identity of issues. *NLRB v. United Technologies Corp.*, 706 F.2d at 1260. If the second proceeding is merely based upon different legal theories or seeks a different recovery, res judicata still applies. *Sam & Mary Housing Corp. v. New York State*, 632 F.Supp. at 1451.

Res judicata will not bar the second proceeding "if the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Davidson v. Capuano*, 792 F.2d at 278 (citations omitted). In *Davidson*, the Second Circuit held that since only those damages which are " 'incidental to the primary relief sought' " will be awarded in an Article 78 proceeding, the plaintiff's 42 U.S.C. § 1983 claim was not barred. *Id.* (quoting N.Y.C.P.L.R. § 7806 (McKinney 1981)).

*Davidson*, however, does not apply where the Article 78 proceeding was commenced to review a determination of an agency which has the statutory power to award damages. *Kirkland v. City of Peekskill*, 828 F.2d 104, 109 (2d Cir.1987).

Under the Rent Stabilization Law, the DHCR may award a plaintiff treble damages[4] as well as attorney's fees.[5] Pursuant to § 2530.1, Mr. Quintana properly sought judicial review of the DHCR's decision by filing his Article 78 petition. Therefore, Mr. Quintana is barred from pursuing this action.

III. Perjury and Subornation of Perjury

Mr. Quintana argues that this court should discharge defendants' attorney because she committed perjury and subornation of perjury. In the affidavit in support of defendants' motion, sworn to on April 14, 1988, defendants' attorney stated that the Article 78 proceeding is "now pending before Justice Wright" and that "the case was scheduled to be heard by Justice Wright on April 11, 1988, but only I appeared for argument. An adjourned date has not yet been selected." Mr. Quintana asserts that these statements were perjury, and that their repetition in Mr. Wiener's affidavit resulted from subornation of perjury.

Defendants' attorney has explained the error, stating that at the time she made those statements she was unaware that Mr. Justice Wright had already decided and dismissed the Article 78 proceeding. Accepting that there was no intent to mislead, I find no basis for dismissing defendants' motion or disqualifying their attorney.

IV. Sanctions

Fed.R.Civ.P. 11 provides for sanctions when a party signs a pleading, motion or

**4.** Section 2526.1(a)(1) provides: "Any owner who is found by the DHCR, after a reasonable opportunity to be heard, to have collected any rent or other consideration in excess of the legal regulated rent shall be ordered to pay to the tenant a penalty equal to three times the amount of such excess," subject to certain exceptions.

**5.** Section 2526.1(d) provides that "an owner who is found to have overcharged by the DCHR may be assessed and ordered to pay to the tenant as an additional penalty the reasonable costs and attorney's fees of the proceeding."

other paper in violation of its requirement that

to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Defendants assert that Mr. Quintana's motion to discharge their counsel and to dismiss their motion amounts to "totally improper ... vitriolic attacks":

It is not acceptable practice to have unfounded allegations of criminal activity, totally collateral to the issues before the Court, rampant throughout the papers submitted to the Court. (Reply Affidavit of Barbara E. Olk, sworn to June 3, 1988, p. 3)

Given that Mr. Justice Wright dismissed Mr. Quintana's petition three weeks before he filed his complaint here, and five weeks before defendants filed their motion to dismiss, Mr. Quintana's assertions seemed well grounded in fact; indeed, one might view them as more accurate than defendants' counsel's assertion, and the legal arguments based upon it, that the Article 78 proceeding was still "pending." Nor is his motion "totally collateral to the issues before the Court." Mr. Quintana's motion directly addresses defendants' contention that the pendency of the state court action mandated dismissal or a stay of this action.

## CONCLUSION

Defendants' motion to dismiss the amended complaint is granted. Plaintiff's motion to discharge defendants' counsel and dismiss their motion is denied. Defendant's motion for sanctions is denied.

The Clerk shall enter judgment dismissing the complaint and the amended complaint.