Richard F. Kuhnen, J.
On April 27, 1966, plaintiff, County of Broome, contracted with defendant architect, George T. Lacey, for the design of a library building at Broome Community College and for the supervision of its construction. Pursuant to this agreement, architect Lacey prepared plans and specifications for the building and subsequently, on June 6, 1966 a contract was let to defendant, Vincent J. Smith, Inc., for the construction. Work was commenced shortly thereafter and on *890 July 10,1968 the construction of the project was completed and the county made final payment to the contractor.
Coincidentally, on the same July 10, 1968 date leaks began to appear in the newly completed library roof. Defendant Lacey was informed of this fact and for some time thereafter he negotiated with the contractor and the roofing subcontractor with respect to this problem. Several remedial tactics were undertaken, but none proved successful as the leaks continued. During this period defendant Lacey communicated regularly with county officials and assured them that with the corrective and repair work being performed ‘ ‘ the resulting roof will equal the original plans and specifications.” Finally, dissatisfied with the results of the corrective measures, plaintiff county commenced this action on September 3,1971. Defendant Lacey now requests that the action against him be dismissed on the ground that the Statute of Limitations has expired.
Although the relationship between these parties originated in contract, the gravamen of the action against defendant Lacey is professional malpractice and the applicable limitation period is three years. (CPLR 214; Klein v. Parke-Bernet Galleries, 21 A D 2d 772; Glens Falls Ins. Co. v. Reynolds, 3 A D 2d 686.) The general rule in this State is that a cause of action for malpractice accrues at the time of the wrongful act or omission by the professional. (Conklin v. Draper, 254 N. Y. 620; Schwartz v. Heyden Newport Chem. Corp., 12 N Y 2d 212.) Under this rule the plaintiff’s cause of action would be time-barred for, as defendant correctly contends, the specific acts of malpractice alleged in plaintiff’s complaint occurred more than three years prior to the date upon which this action was commenced.
There are, however, two exceptions to the general rule governing the accrual of a cause of action of this nature: the “ foreign object ” exception which is limited strictly to medical malpractice and the “ continuous treatment” exception. The latter doctrine holds that when a course of treatment by a professional which includes wrongful acts and omissions has been continuous and is related to the original condition or complaint, the claim accrues at the end of the treatment. (Borgia v. City of New York, 12 N Y 2d 151.)
Defendant points out that the New York courts have never applied the “ continuous treatment” exception to architect malpractice cases. While true, this fact is of little moment for thus far the courts of this State have not been directly confronted with this issue. The problem was alluded to in the recent case of Sosnow v. Paul (43 AD 2d 978) but the court there *891 avoided making a determination on this issue. After deciding that the plaintiff’s action for malpractice against an architect was time-barred under the general rule, the court went on to state in dicta that even if the doctrine of “ continuous treatment ” did not apply to this situation, plaintiff’s action would be untimely for it had not been commenced within three years of the termination of the professional relationship.
The exception was first applied by the Court of Appeals to medical malpractice in the case of Borgia v. City of New York (supra). In that case an infant plaintiff entered the defendant’s hospital on October 10, 1956 and was discharged therefrom on February 14,1958. The alleged malpractice occurred in October of 1956, but notice of claim against the city under section 50-e of the General Municipal Law was not filed until April 18, 1958. The court held that since the infant had been in the continuous care and treatment of the defendant hospital from the time of the original injury, the claim of malpractice did not accrue until the treatment ended on February 14, 1958 and the notice of claim filed 63 days thereafter was therefore timely.
In approving this exception the court stressed the inherent fairness of this rule in the context of the doctor-patient relationship. This relationship is basically one of trust and confidence and in most cases the patient has little or no knowledge of medicine. He, therefore, must depend exclusively on his physician and must have absolute trust in his judgment. Under such circumstances ‘‘ little argument is needed to prove the proposition that thecontinuous treatment ’ theory is the fairer one. It would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician ” (Borgia v. City of New York, supra, p. 156). Moreover, under the contrary rule a physician, aware of his malpractice, might be encouraged to pursue useless corrective treatment until the Statute of Limitations on his original wrongful act or omission had expired.
This doctrine was later extended to attorney malpractice. In the case of Siegel v. Kranis (29 A D 2d 477) plaintiffs had been involved in an automobile accident with an uninsured motorist, but their attorney did not file a claim with the Motor Vehicle .Accident Indemnification Corporation (MVAIC) until almost six months after the accident. MVAIC rejected the claims and plaintiffs then demanded arbitration. More than three years later a jury found against the plaintiffs with respect to the timeliness of their claims and arbitration was permanently stayed. Noting the similar trust and confidence which marks the attorney-client *892 relationship and the advantage which the attorney holds over his unknowledgeable client, the court (p. 480) found that the rule annunciated in Borgia v. City of New York (supra) was “ equally relevant to the conduct of litigation by attorneys.”
The court also noted that there exists a potential abuse if the rule is otherwise: “We note, too, that a contrary rule concerning the accrual of a cause of action against an attorney for malpractice in the management of litigation might well lead to procrastination by the attorney to postpone the inevitable event of defeat. The author of the disaster should not be enabled to chart the strategy to avoid the liability for his own negligence. Otherwise, negligence could be disguised by the device of delay, and an attorney rewarded by immunity from the consequence of his negligence. ’ ’ (Siegel v. Kranis, supra, p. 480.)
A similar rationale has also led to the application of this exception to malpractice cases involving accountants. In Wilkin v. Pickup & Co. (74 Misc 2d 1025, 1027) the court found the language of Borgia (12 N Y 2d 151, supra) and Siegel (29 A D 2d 477, supra) “ to be broad enough-to relate to other professions of a confidential complex relationship such as the profession of certified public accounting. ’ ’
The considerations responsible for the application of this exception to the professions of medicine, law and accounting apply also to the profession of architecture. The architect creates and recommends plans to his client. These plans, conceived in his imagination, are proposed to the client as products of his education, experience and judgment. The client may offer suggestions to the architect, just as he might to his doctor, lawyer or accountant, but generally the client is required to rely almost totally on the professional advice of the architect. He must have confidence in the architect and place his full trust in him. Should problems or difficulties arise during the course of construction, the client, unknowledgeable as he is in matters of building design and construction, is forced to depend almost exclusively on the advice of the architect. As observed in Borgia (supra) and later in Siegel (supra) it would be unfair and unreasonable to require the client in this situation to question the tactics of the architect or to interrupt corrective efforts by the service of a summons and complaint.
As with the doctor, lawyer, or accountant, acts of malpractice by an architect may not be readily apparent to the client. To apply the general rule that a claim for malpractice accrues upon the occasion of negligence may serve to encourage the architect to conceal his errors for sufficient time so as to allow the Statute *893 of Limitations to expire. Or, as alleged in this case, the application of the general rule may inadvertently work an injustice where the architect in good faith leads the client to believe that any damage or injury was caused by a contractor or material supplier, and while in pursuit of relief from that source the client’s time to proceed against the architect elapses. Fairness and justice dictate that a cause of action of this nature accrue only after the professional relationship has been terminated so as to afford the client an opportunity, unhampered by possible concealment, delay or unintended misguidance by the architect, to discover any possible acts or omissions constituting malpractice.
Defendant Lacey also contends that even if the “ continuous treatment” exception is applied, the defense of Statute of Limitations will still be available to him because his professional relationship with the county terminated on June 17, 1968 more than three years before the commencement of this action. This argument fails to recognize the significance of his actions following the June 17 date. After the issuance of the final certificate of payment on this date, defendant Lacey engaged in extensive activity on the county’s behalf in an attempt to correct the leaking roof. This activity included meetings and correspondence with county officials, the principal contractor and a subcontractor as well as the making of recommendations for solutions to the problem. Had the defendant informed the county on June 17 that their professional relationship was terminated and that he would not engage in efforts to correct any problems or defects in the library building without signing a new contract for such extra services, there can be little doubt that this action would have been commenced before September 3, 1971. In fact it is not unlikely that this “continuous treatment” by the defendant lulled the county into an unfounded assurance that the problem would be corrected. It is clear that the professional relationship between these parties continued through the entire period that defendant Lacey acted on the county’s behalf with respect to the problem of the leaking roof.
The motion is denied.