JAMES W. HOERGER et al., Respondents, v BOARD OF EDUCATION OF THE GREAT NECK UNION FREE SCHOOL DISTRICT, Appellant, and GREAT NECK TEACHERS ASSOCIATION, INC., Appellant-Respondent.

Second Department, April 13, 1987

---

### APPEARANCES OF COUNSEL

*Jaspan, Ginsberg, Ehrlich, Reich & Levin (Lawrence W. Reich* of counsel), for appellant.

*James R. Sandner (Jacob S. Feldman* and *Stephen Mendelsohn* of counsel), for appellant-respondent.

*Henry C. Woicik* for respondents.

### OPINION OF THE COURT

MANGANO, J. P.

The primary question to be resolved on the instant appeal is whether the plaintiffs' first cause of action insofar as it is asserted against the defendant union is governed, as argued by the union, by either a four-month or six-month Statute of Limitations, or by this State's six-year Statute of Limitations for contract actions.

Contrary to the union's argument, we hold that the plaintiff's first cause of action against the union is governed by this State's six-year Statute of Limitations for contract actions, as provided in CPLR 213 (2), and was, therefore, timely interposed.

### I

The plaintiffs Hoerger and Hyman are former employees of the Board and were members of the collective bargaining unit represented by the union in its dealings with the Board. Hoerger, Hyman and 42 other teachers retired from the school system at the end of the 1980-1981 school year, pursuant to a retirement incentive plan (hereinafter the plan), jointly developed by the defendants. The plan, which super-

seded the parties' collective bargaining agreement, provided, *inter alia,* that each employee who was at least 45 years of age, had 15 years' creditable teaching experience, and submitted a letter of resignation by April 15, 1981, to be effective June 30, 1981, would receive a lump-sum payment, depending upon the number of participants in the plan, which amount would be considered in the calculation of each retiree's pension benefits. After June 30, 1981, employees would receive a retirement bonus of $3,000 if they retired by the end of the school year in which they were at least 55 years of age and had at least 20 years of credited teaching service. Since 44 teachers submitted their resignations prior to April 15, 1981, the lump-sum benefit to be paid was $13,500 per individual, the plan's maximum amount.

After the date by which the resignations had to be submitted, but before they became effective, the plaintiffs learned that in addition to the 44 employees who were to retire under the plan, three other employees would also retire effective June 30, 1981. However, these three employees had, with the assistance of the union, separately negotiated the terms of their retirements with the Board pursuant to three separate retirement agreements executed on or about June 8, 1981, and each was to receive a retirement incentive benefit significantly higher than that provided by the plan—$20,000, $26,000 and $35,000, respectively.

The plaintiff Hoerger informed the Superintendent of Schools by letter dated June 20, 1981, that he had become aware of these agreements. In addition, all 44 teachers attended a meeting with the defendant union's executive board on or about July 15, 1981, and at that time received confirmation that the three postincentive plan agreements had been negotiated and executed. On or about August 1, 1981, Hoerger filed, *pro se,* an individual notice of claim against the defendant Board, pursuant to Education Law § 3813. Hoerger claimed "[b]reach of contract, misrepresentation and improper bargaining practices" and asserted damages of $100,000. In addition, both Hoerger and Hyman filed individual grievances against the defendant Board on or about August 18, 1981 and October 1, 1981, respectively, with respect to the payments made to retiring teachers. The defendant union took the position that since both Hoerger and Hyman had retired prior to the filing of their grievances, they had no standing to proceed under the grievance procedure of the collective bargaining agreement. Hoerger and Hyman pursued their efforts

to have the union assist them with their grievances through the union's internal appeals process. That process terminated on October 15, 1981, when the union's delegate assembly rejected the "J. Hoerger, E. Hyman, et. al." applications. Hoerger and Hyman thereafter pursued their grievances on their own, but the Board rejected the grievances, adopting the same posture as the union.

Thereafter, in or about January 1982 the instant action was commenced by the plaintiffs, who purported to represent themselves and "all other members of the bargaining unit who retired under [the] Retirement Incentive Plan", against the Board and the union.

The complaint contained essentially two theories of recovery. First, the plaintiffs charged that the defendants had breached the collective bargaining agreement by separately negotiating the retirement plans of three teachers after having presented a specific retirement incentive plan purportedly for all teachers, and accepting the plaintiffs' resignations in accordance therewith; and that the union, by participating in said negotiations, breached its duty to represent fairly the interests of all members of the bargaining unit. With respect to that theory of recovery, the complaint stated:

"8. Plaintiffs bring this suit on behalf of themselves and on behalf of the class (1) *against the Board for breach of the collective bargaining agreement* governing their terms and conditions of employment that expired on June 30, 1981, and (2) *against the Union for its breach of its duty of fair representation * * ***

"17. Such contract also in pertinent part, and as a modification thereto that was ratified by the bargaining unit, includes the Retirement Incentive Plan that is appended hereto as Exhibit 'A' * * *

"19. In accordance with the provisions of the Board-Union Retirement Incentive Plan, plaintiffs and other members of the class who retired under the Plan's provisions *each received a payment of $13,500.*

"20. Following the tendering of these resignations and their acceptance by the Board, and prior to the end of the 1980-1981 school year, the defendants Board and Union met with several other members of the collective bargaining unit and it was agreed that the Board would pay them greater incentives to retire.

"21. With the participation, knowledge and consent of the

Union, retirement incentives have been paid to such other individual members of the collective bargaining unit in the amounts of $20,000, $26,000 and $35,000.

"22. Such enhanced incentives upon information and belief, were arranged by the defendants in a *sub rosa* manner without Union membership knowledge and ratification, in a manner designed to injure plaintiffs, and contrary to the provisions, intent and purpose of the collective bargaining agreement and relationship.

"23. Plaintiffs, by virtue of having received lesser retirement incentives than allowed under the Board's real policy, have been damaged in a sum that cannot be calculated at this time."

Second, the plaintiffs contended that the defendants had fraudulently induced them to retire under the plan by representing to them that the plan was their exclusive option and they could not bargain individually for a greater retirement incentive than that which the plan provided.

The plaintiffs subsequently moved, pursuant to CPLR 902 for a certification of their action as a class action. Special Term granted the plaintiffs' motion for class action certification. On appeal, this court, by order dated December 30, 1983, modified the order of Special Term and held that class action certification could only be granted to the plaintiffs on their first cause of action against the union, which essentially alleged a breach of a duty of fair representation, but could not be granted, for reasons not relevant herein, with respect to the remainder of the complaint *(Hoerger v Board of Educ.,* 98 AD2d 274).

Additionally, as a result of this court's decision, the plaintiffs were permitted to proceed with their individual claims of fraud against the union.

## II

Following this court's decision *(Hoerger v Board of Educ., supra),* the union moved to amend its answer to (1) assert cross claims against the Board for indemnification and contribution, respectively, and (2) assert the affirmative defense of the Statute of Limitations and urge dismissal on that ground of the plaintiffs' cause of action to recover damages for breach of a duty of fair representation, i.e., the first cause of action interposed against it. In this regard, the union argued that the Statute of Limitations governing the plaintiffs' first cause of

action against it was either four months, i.e., the time within which an unfair labor practice had to be brought before the Public Employment Relations Board (Civil Service Law § 209-a; 4 NYCRR 204.1 [a] [1]) or at best, six months, i.e., the time period prescribed in the National Labor Relations Act § 10 (b) for bringing a charge of an unfair labor practice before the National Labor Relations Board (29 USC § 160 [b]; *DelCostello v Teamsters*, 462 US 151).

The Board cross-moved to dismiss the complaint for failure to state a cause of action, and in the alternative requested (1) an order severing the individual claims of the plaintiffs Hoerger and Hyman, as against the Board, for purposes of trial, from the individual and class claims of the plaintiffs against the union and (2) an order, pursuant to CPLR 3016 (b), requiring that plaintiffs state in detail the circumstances constituting the fraud or misrepresentation as against the Board.

The Board, in its papers submitted in support of the cross motion, also opposed that branch of the union's motion which was for leave to assert cross claims against it.

Special Term denied that branch of the union's motion which was to interpose the defense of the Statute of Limitations in its answer and to dismiss the plaintiffs' first cause of action against it as untimely. In so holding, Special Term opined that the New York State six-year Statute of Limitations for contract actions contained in CPLR 213 (2) governed the plaintiffs' first cause of action against the union and that the cause of action was therefore clearly commenced in a timely manner. Special Term granted that branch of the union's motion which was for leave to interpose cross claims for indemnification and contribution against the Board. Finally, Special Term denied the defendant Board's cross motion.

## III

In *United Parcel Serv. v Mitchell* (451 US 56) a car washer employed by United Parcel Service (hereinafter UPS) at one of its New York plants, was discharged for alleged dishonest acts. The employee requested his union to file a grievance contesting the discharge. The collective bargaining agreement provided a grievance and arbitration procedure for the resolution of covered disputes. Pursuant to agreement, the employee's grievance was submitted to a panel consisting of three

union and three company representatives and the discharge was upheld. Seventeen months later, the discharged employee filed suit in Federal court against UPS and the union under Labor Management Relations Act § 301 (a) (29 USC § 185 [a]) alleging that the union had breached its duty of fair representation and that UPS had discharged him, not for the publicly stated reasons, which it knew to be false, but to replace full-time employees with part-time employees. The United States District Court for the Eastern District of New York granted summary judgment to UPS and the union on the ground that the action was time barred by New York State's 90-day Statute of Limitations governing actions to vacate arbitration awards. The United States Court of Appeals for the Second Circuit reversed *(Mitchell v United Parcel Serv.,* 624 F2d 394) holding that the United States District Court should have applied New York's six-year Statute of Limitations for breach of contract actions provided for in CPLR 213 (2).

The employer UPS alone sought, and was granted, further review in the Supreme Court of the United States. The Supreme Court of the United States reversed the Court of Appeals, and held that "[g]iven the choices present * * * and the undesirability of the results of the grievance and arbitral process being suspended in limbo for long periods * * * the District Court was correct when it chose the 90-day period imposed by New York for the bringing of an action to vacate an arbitration award" *(United Parcel Serv. v Mitchell, supra,* at 64). In an opinion, in which he concurred in part and dissented in part, Justice Stevens noted that the court's holding, under the procedural posture of the appeal, only applied to the employee's suit against his former employer but did not resolve the question of "whether the same statute of limitations governs an employee's claim against the union for breach of the duty of fair representation" *(United Parcel Serv. v Mitchell, supra,* at 72). With respect to the latter issue, Justice Stevens reasoned that the employee's claim against his union was properly characterized "as a malpractice claim" *(United Parcel Serv. v Mitchell, supra,* at 74).

While the appeal to the Supreme Court of the United States in *United Parcel Serv. v Mitchell (supra)* was *sub judice,* several similar lawsuits had been working their way through the Federal courts of Maryland and New York. In Maryland, a Federal District Court held that the applicable Statute of Limitations for a suit brought by an employee against his employer, Anchor Motor Freight, Inc., and his union, was

Maryland's three-year Statute of Limitations for contract actions *(DelCostello v International Bhd. of Teamsters,* 510 F Supp 716). On reconsideration, following the decision of the United States Supreme Court in *United Parcel Serv. v Mitchell (supra),* the United States District Court for the District of Maryland granted summary judgment to the employer and the union, concluding that the holding of the Supreme Court of the United States compelled application of Maryland's 30-day Statute of Limitations for actions to vacate arbitration awards *(DelCostello v International Bhd. of Teamsters,* 524 F Supp 721). The United States Court of Appeals for the Fourth Circuit affirmed on the basis of the order of the District Court *(DelCostello v International Bhd. of Teamsters,* 679 F2d 879).

Under a similar fact pattern, a Federal District Court in New York dismissed a suit brought by two employees, against their employer Bethlehem Steel Corporation and their union, Local 2601 of the United Steel Workers of America, on the ground that the Statute of Limitations governing the causes of action against the employer and the union was New York's 90-day Statute of Limitations for actions to vacate arbitration awards. The Court of Appeals for the Second Circuit reversed, holding that the actions against the employer and the union were both governed by New York's six-year Statute of Limitations for contract actions provided for in CPLR 213 (2) *(Flowers v Local 2602 of United Steel Workers,* 622 F2d 573). Upon reconsideration, following the decision of the Supreme Court of the United States in *United Parcel Serv. v Mitchell (supra),* the Second Circuit held that New York's 90-day Statute of Limitations for actions to vacate arbitration awards governed the cause of action against the employer, but that New York's three-year Statute of Limitations for malpractice actions provided for in CPLR 214 (6) governed the cause of action interposed by the employees against the union *(see, Flowers v Local 2602 of United Steel Workers,* 671 F2d 87).

On appeal to the Supreme Court of the United States *(DelCostello v Teamsters,* 462 US 151, *supra),* the employees argued that their causes of action against both the employer and the union should be governed by the six-month time period prescribed in National Labor Relations Act § 10 (b) for bringing a charge of an unfair labor practice to the National Labor Relations Board (29 USC § 160 [b]). The union, on the other hand, argued that New York's 90-day Statute of Limitations for vacatur of arbitration awards should govern the

cause of action asserted against it as well as the one asserted against the employer.

In deciding the issue of the appropriate Statute of Limitations to be applied, the Supreme Court of the United States in *DelCostello v Teamsters (supra)* initially noted that (1) there was "no federal statute of limitations * * * applicable to this suit", and (2) "Congress intended that the courts apply the most closely analogous statute of limitations under state law" *(DelCostello v Teamsters, supra,* at 158). The Supreme Court further noted that in "some circumstances * * * state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law", and in those circumstances, it was within its power to decline "to borrow state statutes" and instead to use "timeliness rules drawn from federal law" *(DelCostello v Teamsters, supra,* at 161-162). Finally, the Supreme Court noted that in *United Parcel Serv. v Mitchell* (451 US 56, *supra),* it was not confronted with the argument that a specific Federal Statute of Limitations, namely, National Labor Relations Act § 10 (b) should be borrowed, rather than a State Statute of Limitations.

With that background, the United States Supreme Court held in *DelCostello v Teamsters (supra)* that the six-month limitation period provided in National Labor Relations Act § 10 (b) (29 USC § 160 [b]) should be the applicable Statute of Limitations governing the causes of action asserted therein against the employer and against the union. In so holding, the court concluded that the employee's claim therein against his employer, was properly characterized as analogous to an action to vacate an arbitration award. Nevertheless, the court rejected New York's 90-day Statute of Limitations which flowed from that analogy, on the ground that: "[S]tate arbitration statutes typically provide very short times in which to sue for vacation of arbitration awards. Concededly, the very brevity of New York's 90-day arbitration limitations period was a major factor why, in *Mitchell,* we preferred it to the 6-year statute for breach of contract, 451 U. S., at 63-64; but it does not follow that because 6 years is too long, 90 days is long enough. See also *Hoosier, supra,* at 707, n. 9. We conclude that state limitations periods for vacating arbitration awards fail to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights under § 301 and the fair representation doctrine" *(DelCostello v Teamsters, supra,* at 166).

With respect to the employee's cause of action against the

union, the Supreme Court of the United States concluded that Justice Stevens' analogy of that action to one for legal malpractice was "admittedly the closest state-law analogy" *(DelCostello v Teamsters, supra,* at 167). Nevertheless, the court held that "it [New York State's Statute of Limitations for legal malpractice actions] suffer[ed] from objections peculiar to the realities of labor relations and litigation" *(DelCostello v Teamsters, supra,* at 167).

On the instant appeal, the defendant union argues that the holding of the Supreme Court of the United States in *DelCostello v Teamsters (supra)* compels us to utilize the six-month limitations period established therein as the appropriate Statute of Limitations applicable to the plaintiffs' first cause of action interposed against it. In the alternative, the union argues by analogy, that the four-month limitation period set by State administrative regulation for bringing unfair labor practice charges before the Public Employment Relations Board should apply to the plaintiffs' first cause of action interposed against it *(see,* Civil Service Law § 209-a; 4 NYCRR 204.1 [a] [1]). Although we are cognizant that the Appellate Divisions, Third and Fourth Departments, have applied the six-month limitation period established in *DelCostello v Teamsters (supra)* to cases similar to the one at bar *(see, Ferri v Public Employees Fedn.,* 115 AD2d 814; *Baker v Board of Educ.,* 123 AD2d 500), we decline to follow these cases, and concur instead with Special Term's observation that *DelCostello v Teamsters (supra)* is wholly inapplicable to actions arising out of public sector employment.

The cause of action by an employee against his or her union for breach of its duty of fair representation has its genesis in Federal law as an implied cause of action under Federal labor statutes *(see, DelCostello v Teamsters, supra,* at 164, n 14; *Matter of Civil Serv. Bar Assn. v City of New York,* 64 NY2d 188, 195-196). Although the State and its political subdivisions are specifically exempted from the coverage of Federal labor laws *(see,* 29 USC § 152 [2]; Civil Service Law § 209-a [3]), the courts of this State have nonetheless recognized a similar cause of action under State law extending to public sector employees *(see, Matter of Civil Serv. Bar Assn. v City of New York, supra,* at 196). In contrast to Federal law, however, specific time limitations have been established by our State Legislature for all actions arising under State law. Thus, while State courts have correctly applied the six-month limitation period established in *DelCostello v Teamsters (supra),* to

"hybrid" actions brought by private sector employees (see, Callens v Simmons Mach. Tool Corp., 110 AD2d 994, appeal withdrawn 67 NY2d 758; Taylor v St. John's Episcopal Hosp., 96 AD2d 886; Alexander v Mount Sinai Med. Center, 96 AD2d 488), we are compelled to look to our specific Statutes of Limitation to determine which one of them is to be applied to similar actions brought by public employees. As heretofore noted, both the Supreme Court of the United States and the United States Court of Appeals for the Second Circuit have commented with approval on the analogy between the plaintiffs' first cause of action herein against the defendant union and a legal malpractice action. We, too, approve of this analogy. While this analogy would, at first blush, seem to indicate that this State's three-year Statute of Limitations for malpractice actions (CPLR 214 [6]) governs the plaintiffs' first cause of action interposed against the defendant union, our Court of Appeals has made it clear that a professional malpractice action which seeks to recover damages to property or pecuniary interests is governed by this State's six-year contract Statute of Limitations provided for in CPLR 213 (2) (Video Corp. v Flatto Assocs., 58 NY2d 1026, modfg 85 AD2d 448, on dissenting opn of Sandler, J., at App Div). Since the plaintiffs' first cause of action against the defendant union was clearly commenced within that time period, those branches of the motion of the union which were to interpose a defense of the Statute of Limitations and to dismiss that cause of action as untimely, were properly denied.

## IV

We have reviewed the remaining arguments raised by the Board regarding the disposition of its cross motion and that branch of the union's motion which was for leave to amend its answer to assert two cross claims against the Board, and agree with Justice Berman that those arguments are without merit (see also, CPLR 3211 [e]; Matter of Hoffman v Board of Educ., 84 AD2d 840; McDermott v City of New York, 50 NY2d 211, 218, rearg denied 50 NY2d 1059; CPLR 1007).

Accordingly, the order should be affirmed insofar as appealed from, with costs.

LAWRENCE, WEINSTEIN and EIBER, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.