**Hobart E. ROSEN, Norma Rosen, and Frances Lipman, Plaintiffs,**

v.

**Ira SPANIERMAN and Ira Spanierman Gallery, Defendants.**

No. 87 Civ. 9045(PKL).

United States District Court, S.D. New York.

April 24, 1989.

---

Scheffler Karlinsky & Stein, New York City (Martin Karlinsky, of counsel), for plaintiffs.

Rose & Boxer, New York City (Barry J. Boxer, of counsel), for defendants.

## ORDER & OPINION

LEISURE, District Judge:

Plaintiffs Hobart E. Rosen, Norma Rosen (collectively "the Rosens") and Frances Lipman ("Lipman") brought this action against defendants Ira Spanierman and the Ira Spanierman Gallery (collectively "Spanierman"),[1] asserting claims for breach of warranty, common law fraud, professional negligence, and negligent misrepresentation. Defendant moved for summary judg-

---

1. Although there are two named defendants, the Court will refer to them collectively in the singular (*e.g.,* "defendant" or "Spanierman"), as all acts alleged in this action were committed by Ira Spanierman, who is the sole owner of the Ira Spanierman Gallery. Amended Complaint ¶ 4.

ment, pursuant to Fed.R.Civ.P. 56(c), contending that plaintiffs' claims are barred by the applicable statutes of limitation and do not constitute claims upon which relief can be granted. The action is currently before the Court on defendant's motion for summary judgment.

## FACTUAL BACKGROUND

In 1968 the Ira Spanierman Gallery ("Spanierman Gallery") displayed a portrait titled "The Sisters (or Misses) Wertheimer" (the "Painting") in New York City. The Rosens viewed the Painting and negotiated for its purchase. Lipman herself purchased the Painting for $15,000 on December 20, 1968, as a present for her daughter and son-in-law, the Rosens. As far as the record indicates, Lipman was never present in the Ira Spanierman Gallery, nor did she ever meet with Ira Spanierman.

Spanierman guaranteed, in the written invoice, that the Painting was an original work by John Singer Sargent ("Sargent"), allegedly "acquired from a member of the Wertheimer family, from the estate of Michael Gluck." Defendants' Notice of Motion for Summary Judgment ("Defendants' Motion"), Exhibit E. The invoice was addressed to "Mrs. Samuel [Frances] Lipman c/o Mr. Hobart E. Rosen." *Id.* Lipman then made a gift of the Painting to the Rosens.

Subsequently, the Rosens requested appraisals of the Painting, from Spanierman, for insurance purposes. Spanierman, without reviewing the Painting, provided five written appraisals. The appraisals were as follows: in 1975 for $25,000; in 1979 for $38,000; in 1980 for $52,000; in 1984 for $110,000; and, in 1986 for $130,000. Plaintiffs' Opposition to Defendants' Motion ("Plaintiffs' Opposition"), Exhibit C. Plaintiffs also allege other appraisals of the Painting were made. In 1984, the Rosens wrote to Warren Adelson ("Adelson") at the Coe Kerr Gallery, enclosing a photo of the Painting for possible inclusion in a "catalog raisonne" of the works of Sargent. Hobart Rosen simultaneously requested an appraisal of the Painting. Plaintiffs' Opposition, Exhibit D. Allegedly, the Rosens were informed that the Coe Kerr Gallery did not provide appraisals. Affidavit of Hobart E. Rosen, sworn to on September 22, 1988 ("Rosen Affidavit"), ¶ 24.[2] Additionally, on or about January 15, 1987 Peter Rathbone of Sotheby's Parke Bernet ("Sotheby's"), allegedly conducted an appraisal of the Painting, valuing it for between $175,000 and $225,000. Rosen Affidavit ¶ 27.

In 1987, Jay Cantor ("Cantor") of Christie's Appraisals ("Christie's") viewed the Painting and valued it at $250,000 in a written appraisal. Rosen Affidavit ¶¶ 27, 28. Subsequently, the Rosens authorized Christie's to place the Painting at auction. However, the Rosens were allegedly informed that the Painting was "possibly a forgery" and therefore would not be placed at auction. Rosen Affidavit ¶ 30. Christie's immediately withdrew the Painting from the sale.

Plaintiffs assert that the Painting is a replica of a full length portrait, by Sargent,

---

2. The Court notes that plaintiffs have submitted various hearsay statements in their papers in opposition to this motion. Fed.R.Civ.P. 56(e) requires a motion for summary judgment to be supported with affidavits based on personal knowledge, *Scheiss–Froriep Corp. v. S.S. Finnsailor*, 574 F.2d 123, 126 (2d Cir.1978), and a hearsay affidavit is not a substitute for personal knowledge of a party. *Chandler v. Coughlin*, 763 F.2d 110, 113–14 (2d Cir.1985); *U.S. v. Bosurgi*, 530 F.2d 1105, 111–12 (2d Cir.1976), *cert. denied* 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980). "The party opposing the motion [for summary judgment] must demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action or tender an acceptable excuse for his failure so to do, and

the submission of a hearsay [affidavit] alone does not satisfy this requirement." *Zuckerman v. City of New York*, 49 N.Y.2d 557, 560, 427 N.Y.S.2d 595, 596, 404 N.E.2d 718, 718 (1980); *see also GTF Marketing, Inc. v. Colonial Aluminum Sales, Inc.*, 66 N.Y.2d 965, 967, 498 N.Y.S.2d 786, 788, 489 N.E.2d 755, 756 (1985). However, Rule 56(e) defects are waived where, as here, no motion to strike is directed to them. *See, e.g., DeCintio v. Westchester County Medical Center*, 821 F.2d 111 (2d Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *In re Teltronics Services, Inc.*, 762 F.2d 185, 192 (2d Cir.1985); *Perma Research and Development Co. v. Singer Co.*, 410 F.2d 572, 577–78 (2d Cir.1969).

which is hanging in the Tate Gallery, England. On June 5, 1987, plaintiffs allegedly brought the Painting to Adelson, who compared the Painting to an authentic Sargent and demonstrated to the Rosens why the Painting was not authentic. Rosen Affidavit ¶ 33. Plaintiffs assert that this was the first time they knew with certainty that the Painting was not authentic and had no significant economic value. Rosen Affidavit ¶ 34. Thereafter, plaintiffs initiated this suit.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment ... [it] is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court then must determine whether there does indeed exist a genuine issue as to any material fact; "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is genuine issue for trial." *Id.*, 477 U.S. at 249, 106 S.Ct. at 2511; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102 (2d Cir.1989).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, Rule 56 does not require that the moving party support its motion with affidavits or other similar materials which negate the opponents' claim. Rather, "the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* The burden on the moving party will be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.

Indeed, once a motion for summary judgment is properly made, the burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511. Because the District Court must determine "whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of any party," *id.*—the non-moving party must produce, at the summary judgment stage, "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.... If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* While the Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975) (citations omitted), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

Ultimately, "[i]n considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess wheth-

er there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *see also Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied,* —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

## DISCUSSION

Plaintiffs have asserted four causes of action: (1) breach of warranty; (2) common law fraud; (3) professional negligence; and (4) negligent misrepresentation. Spanierman contends these claims are barred by the applicable statute of limitations and, moreover, that they fail to state claims upon which relief can be granted. Each of plaintiffs' claims will be addressed in turn.

### 1. *Express Warranty Claim*

■ In the invoice dated December 20, 1968, Spanierman guaranteed that the Painting was an authentic John Singer Sargent. The parties do not dispute that this is an express warranty. Rather, defendant contends that as this warranty was given over twenty years ago plaintiffs' cause of action is time barred.

The New York statute of limitation for breach of a sales contract is set out in N.Y.U.C.C. ("UCC") § 2–725.[3] That section provides:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued....

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

There is no question that plaintiffs' action was untimely under this statute if it accrued at the time they purchased the Painting and received the warranty because those events occurred over twenty years before the suit was filed. Plaintiffs therefore contend that this case falls within the exception to § 2–725(2), and that the cause of action accrued upon their alleged discovery in 1987 that the Painting was not authentic. Plaintiffs argue that the warranty of authenticity of a painting *necessarily* relates to the future condition of the artwork despite the absence of explicit language to that effect, and, for that reason, they claim that the exception in section 2–725(2) should apply to them.

Section 2–725(2) refers to a warranty of "future performance," so plaintiffs' theory depends first on extending the concept of a "performance" to a painting. Paintings, unlike more commonplace consumer goods such as washing machines, or automobiles, generally are not bought based on how they "function." Allegedly, a painting performs "by being what it is represented to be." *See Lawson v. The London Arts Group*, 708 F.2d 226, 228 (6th Cir.1983). Upon this theory, the Painting could "perform" only by being an authentic Sargent. Assuming, *arguendo*, that a painting does "perform" by being genuine, the question then becomes whether an express warranty of authenticity not only guaranteed the "being" of the Painting at the time of purchase as a Sargent, but also extended to the future existence of the Painting as a Sargent. Plaintiffs argue that because the authenticity of a painting does not change

---

**3.** In a diversity action, a federal district court applies the substantive law of the state in which it sits. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Statute of limitations have been deemed substantive and not procedural. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Without discussion, the parties appear to agree, and the Court therefore assumes, that the New York law is applicable to the substantive issues raised in the motions. *See Gelb v. Royal Globe Insurance Co.*, 798 F.2d 38, 44 n. 5 (2d Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987); *cf. Ostano Commerzanstalt v. Telewide Systems, Inc.*, 794 F.2d 763, 765 n. 1 (2d Cir.1986).

over time, the warranty necessarily guaranteed the present *and future* existence of the Painting as an authentic Sargent.

Plaintiffs' argument is persuasive if one's goal is to furnish protection for art buyers equivalent to that provided expressly by § 2–725(2) to purchasers of other goods. There is appeal in the argument that, in the circumstances of this case, the exception in § 2–725(2) should be triggered by any warranty of authenticity, which must be understood as at least an *implicit* promise of future performance. Nevertheless, the Court declines to ignore the literal language of the statute requiring an *explicit* promise of future performance. *See Wilson v. Hammer Holdings, Inc.,* 850 F.2d 3, 5 (1st Cir.1988) (warranty of authenticity of painting is not an explicit warranty of future performance under the UCC).[4] The Court is reluctant to waive the specific eligibility requirements established by the legislature for what, it must be remembered, is an *exception* to the general limitations rule.

In support of their position, plaintiffs point to *Mittasch v. Seal Lock Burial Vault, Inc.,* 42 A.D.2d 573, 344 N.Y.S.2d 101 (2d Dep't 1973), in which they claim the court inferred a warranty of future performance that was not specifically stated in the warranty language. However, in *Mittasch,* the court simply decided that the express warranty given the purchaser did *explicitly* extend to the future performance of the item purchased. In that case, the warranty for a burial vault promised "satisfactory service at all times." *Mittasch,* 344 N.Y.S.2d at 103. The court found this language was intended as an explicit warranty of future performance.

Moreover, even if this Court were to accept the argument that the warranty of authenticity necessarily extended to future performance, the action would nevertheless be time barred. The statute requires that discovery of the breach "must await" the time of such future performance. However, due to the static nature of a painting's authenticity, the buyer of a painting is no less capable of discovering the forgery at the time of purchase than at some later date. Plaintiffs appear to contend that it would be commercially unreasonable and unfair to insist upon a strict interpretation of the discovery element of § 2–725(2) in the context of art sales because buyers pay for the expertise of an art dealer when purchasing a work with the expectation that the dealer will stand behind the promise of authenticity. Therefore, art purchasers should not be required to pay a second expert to verify the work of the first one in order to preserve their rights to sue for breach of warranty at some later time. However, even this argument would require only that, when an art buyer has no reason at the time of purchase to question the authenticity of the painting, "the breach await, rather than *necessarily* await, future performance." *Wilson, supra* at 6. This could not have been the intent of the statutory language because it would mean that the statute of limitations for art buyers would run indefinitely.

Undoubtedly, the statutory language of § 2–725(2) was intended for situations in which goods contain a latent defect at the time of purchase that does not cause the goods to break down until some later time. In such circumstances, the buyers cannot know of the breach until the product "misperforms." In the instant case the Painting failed to exist as a Sargent as much at the time of purchase as at the time the buyers discovered the Painting's true nature. Although plaintiffs were unaware of the Painting's faulty performance, the performance never changed. It is clear beyond cavil that plaintiffs could have discovered the problem from the outset by means of a second expert opinion. "[I]n the absence of an explicit promise of future performance—a cause of action *is* lost after four years regardless of the aggrieved par-

---

**4.** Finding no New York precedent on point, the Court adopts interpretations of the Uniform Commercial Code in similar cases from other jurisdictions, as New York would. *See Sobiech v. International Staple & Machine Co.,* 867 F.2d 778 (2d Cir.1989). The First Circuit, in *Wilson, supra,* interpreted Mass.Gen.Law c. 106, § 2–725(2), which is identical to N.Y.U.C.C. § 2–725(2).

ty's lack of knowledge of the breach." *Wilson, supra* at 7 (emphasis in original).

The Court is reluctant to enlarge the scope of the exception in § 2–725(2). In the present case, plaintiffs filed suit twenty years after the purchase of the Painting. Although New York legislators may choose to provide perpetual protection for the consumers of artistic products, it would be presumptuous for the Court to assume that this was what they intended in the present language of UCC § 2–725(2).[5]

Accordingly, plaintiffs' cause of action for breach of the express warranty of authenticity does not fall within the exception to § 2–725(2). Plaintiffs' cause of action for breach of warranty therefore accrued at the time of sale in 1968. As a result, it is barred by the four year statute of limitation under UCC 2–725.

### 2. *Fraud*

Plaintiffs also assert a claim for common law fraud. The elements of a claim for common law fraud are that a defendant made: (1) a misrepresentation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely on it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity, and (8) to his injury. *See, e.g., Mallis v. Bankers Trust Co.,* 615 F.2d 68 (2d Cir.1980), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981); *Jo Ann Homes at Bellmore, Inc. v. Dworetz,* 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 250 N.E.2d 214 (1969); *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.,* 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958).

■ Plaintiffs concede in this action that the purchaser of the Painting was Lipman. Nevertheless, plaintiffs contend that all the purported representations which were relied upon were made to plaintiff Hobart Rosen. Specifically, plaintiffs assert that "Lipman did not see the Painting prior to the time of its delivery to the Rosen home

... and had no direct contact with defendant Ira Spanierman or with anyone else at the Ira Spanierman Gallery. *All* representations ... were made directly by defendants to plaintiff Hobart E. Rosen." Rosen Affidavit ¶ 4 (emphasis added). Neither the complaint nor papers in opposition to this motion contain even a bare allegation of reliance on the part of Lipman. Nor do plaintiffs offer any theory or facts by which the representations to Hobart Rosen could be deemed to have been made to Lipman. As no representations were made to plaintiff Lipman, her claim for fraud must fail.

■ Moreover, although plaintiffs make the conclusory allegation that the Rosens relied on the purported representations they have failed to allege how the Rosens relied. "A false representation does not, without more, give rise to a cause of action ... in favor of the person to whom it is addressed. To give rise, under any circumstances, to a cause of action ... reliance on the false representation must result in injury." *Wittenberg v. Robinov,* 9 N.Y.2d 261, 265, 213 N.Y.S.2d 430, 432, 173 N.E.2d 868, 870 (1961) (Van Voorhees, J., dissenting in part) (*citing Sager v. Friedman,* 270 N.Y. 472, 479, 1 N.E.2d 971 (1936)); *see also Galvez v. Local 804 Welfare Trust Fund,* 543 F.Supp. 316 (E.D.N.Y.1982). The Rosens have failed to allege how they relied, *i.e.* changed their position, as a result of defendant's statements. It is conceded that the Rosens did not purchase the Painting. Rather, plaintiff Lipman purchased the Painting and subsequently gave it to the Rosens as a gift. In order to constitute the basis of a claim for fraud it is obvious that the misrepresentations must be made to a party to the transaction, not to a third party. Plaintiffs claim, without authority, that Lipman made a "contemporaneous gift" of the Painting to them and that therefore, they somehow became parties to the transaction. However, the fact remains that the Rosens did not rely on the representations made.

---

**5.** New York's Arts And Cultural Affairs § 13.03 (McKinney 1986) does provide that the sale of a work of art creates an express warranty of authenticity as of the date of the sale, but does not address any statute of limitations exceptions particular to the sale of a work of art.

In order to survive a summary judgment motion, plaintiffs must present supporting facts and arguments showing some legal basis for liability on the part of defendant; it is not enough to put forward conclusory allegations of wrongdoing. *See Greater Buffalo Press, Inc. v. Federal Reserve Bank of New York*, 866 F.2d 38 (2d Cir. 1989); *Miracle Mile Associates v. City of Rochester*, 617 F.2d 18, 21 (2d Cir.1980); *Securities and Exchange Commission v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978). Although, the Rosens have made the bald assertion that they relied on the purported misrepresentations they have failed to produce sufficient evidence for a jury to return a verdict in their favor. In sum, plaintiffs have failed to state a claim for fraud and consequently, defendant's motion for summary judgment on plaintiffs' claim of fraud is hereby granted.

3. *Professional Negligence*

■ Plaintiffs' third cause of action is for professional negligence. This claim is governed by the six year statute of limitations for contract actions. N.Y.C.P.L.R. ("CPLR") § 213 (McKinney 1983); *Video Corporation of America v. Frederick Flatto Associates*, 58 N.Y.2d 1026, 1028, 462 N.Y.S.2d 439, 439, 448 N.E.2d 1350, 1350 (1983) ("an action for failure to exercise due care in the performance of a contract insofar as it seeks recovery for damages to property or pecuniary interests re-

coverable in a contract action is governed by the six-year contract Statute of Limitations."); *Sears Roebuck & Co. v. Enco Assoc.*, 43 N.Y.2d 389, 401 N.Y.S.2d 767, 372 N.E.2d 555 (1977); *Hoerger v. Board of Education of the Great Neck Union Free School District*, 127 A.D.2d 88, 98, 514 N.Y.S.2d 395, 402 (2d Dep't 1987) ("a professional malpractice action which seeks to recover damages to property or pecuniary interests is governed by this State's six-year contract Statute of Limitations...."). The statute begins to run when the cause of action accrues. CPLR § 213. In the present case, the cause of action accrued on December 20, 1968, when plaintiff Lipman purchased the Painting. It is undisputed that, in the absence of a tolling provision, plaintiffs' claim for professional negligence is time barred.

■ The continuous treatment doctrine provides that in actions for professional [6] negligence the statute may be tolled until the relationship of trust comes to an end. *Rizk v. Cohen*, 73 N.Y.2d 98, 538 N.Y.S.2d 229, 535 N.E.2d 282 (1989); *see also Greene v. Greene*, 56 N.Y.2d 86, 92, 451 N.Y.S.2d 46, 49, 436 N.E.2d 496, 499 (1982). The continuous treatment doctrine originated in medical malpractice cases,[7] where it was held that "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint, the 'accrual' [of the cause of action]

**6.** The Court notes that the use of the term "professional" in the context of a cause of action for professional negligence is not coterminous with the term "professional" as used in the context of the continuous treatment doctrine. *See, e.g., Flora's Card Shop, Inc. v. Paul Krantz & Co.*, 111 Misc.2d 907, 445 N.Y.S.2d 392 (1981). The term "professional" in the context of stating a claim for professional negligence refers to the standard of care required by a defendant. As a general matter, a person has the duty to act as a "reasonable man of ordinary prudence." *Prosser and Keeton on Torts* § 32 (5th ed. 1984). This is a minimum standard below which the individual will not be permitted to fall. However, if a person in fact has knowledge, skill, or even intelligence superior to that of the ordinary person, *i.e.* he is a "professional," the law will demand of that person conduct consistent with it. Persons who undertake any work calling for special skill are required not only to

exercise reasonable care in what they do, but also to possess a standard minimum of special knowledge and ability. The term "professional" as used in the context of the continuous treatment doctrine is discussed *infra*.

**7.** CPLR 214–a codified the continuous treatment doctrine in medical malpractice actions and makes no reference to other types of malpractice actions. However, section 214–a was not designed as an over-all recodification or abrogation of judicial principles relating to the timeliness of all types of malpractice actions. Thus, in medical malpractice cases the continuous treatment doctrine is controlled by statute; but with respect to other types of professional dereliction, judicial authority has been left intact. *See, e.g., Greene v. Greene*, 56 N.Y.2d 86, 96, 451 N.Y.S.2d 46, 51, 436 N.E.2d 496, 501 (1982).

comes only at the end of the treatment." *Borgia v. City of New York*, 12 N.Y.2d 151, 155, 237 N.Y.S.2d 319, 321, 187 N.E.2d 777 (1962). For this reason, the continuous treatment doctrine has not been confined to medical malpractice cases but has been extended to encompass other types of professional negligence. *See Greene v. Greene*, 56 N.Y.2d 86, 94, 451 N.Y.S.2d 46, 50, 436 N.E.2d 496, 500 (1982) (legal malpractice); *Alexander & Baldwin, Inc. v. Peat, Marwick, Mitchell & Co.*, 385 F.Supp. 230, 235 (S.D.N.Y.1974) (accountants' malpractice); *County of Broome v. Vincent J. Smith, Inc.*, 78 Misc.2d 889, 358 N.Y.S.2d 998 (1974) (architectural malpractice). The continuous treatment doctrine has never, however, been applied to art dealers. The Court must therefore determine whether the continuous treatment doctrine should be extended to include art dealers.

The underlying rationale of the rule is the recognition "that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered." *Greene v. Greene, supra*, 56 N.Y.2d at 94 (*citing Siegel v. Kranis*, 29 A.D.2d 477, 288 N.Y.S. 2d 831 (1968)). As a general matter, the continuous treatment doctrine has only been applied to what can be termed "professionals," for example, doctors, lawyers, and accountants. The surface analogy offered by plaintiffs between the "professions" of doctors, lawyers and accountants, on one hand, and, an art dealer, on the other hand, evanesces upon closer scrutiny.

The New York courts have not defined the term "professional" as used in conjunction with the continuous treatment doctrine, however; in applying the Donnelly Act,[8] the New York courts have defined a profession as follows:

1) extensive formal training and learning;

2) admission to practice by a qualifying licensure;

3) a code of ethics imposing standards qualitatively beyond those that prevail or are tolerated in the marketplace;

4) a duty to subordinate financial reward to social responsibility; and

5) an obligation on its members, even in non-professional matters, to conduct themselves as members of a learned, disciplined, and honorable occupation.

*Lincoln Rochester Trust Co. v. Freeman*, 34 N.Y.2d 1, 7, 355 N.Y.S.2d 336, 339, 311 N.E.2d 480, 482 (1974); *see also People v. Roth*, 52 N.Y.2d 440, 438 N.Y.S.2d 737, 420 N.E.2d 929 (1981); *In re Application of American Dental Cooperative v. The Attorney General of the State of New York*, 127 A.D.2d 274, 514 N.Y.S.2d 228 (1987). It is clear that, applying the above definition, art dealers are not professionals.

Moreover, the courts, under the continuous treatment doctrine, have drawn a distinction between professions, which primarily provide services, and businesses, which primarily provide goods. *See e.g. Flora's Card Shop, Inc. v. Paul Krantz & Co.*, 111 Misc.2d 907, 445 N.Y.S.2d 392 (1981) (insurance broker, as seller of goods, not professional under continuous treatment doctrine). Common to the "service" professions of doctor, lawyer, and accountant is the fact that the "client" cannot be expected to file suit and "interrupt the corrective efforts [of the defendant-professional] by serving a summons on the [professional]." *County of Broome v. Vincent J. Smith, Inc.*, 78 Misc.2d 889, 892, 358 N.Y.S.2d 998, 1003 (1974) (where architect assured county officials that corrective repairs were being made, the continuous treatment exception was applicable). For the continuous treatment doctrine to apply, the client must be forced to depend exclusively on the advice of the "professional" until the professional relationship is terminated, in order not to encourage the professional to conceal his errors during the course of the relationship. *Id.* 358 N.Y.S.2d at 1003.

---

8. N.Y.Gen.Bus.Law § 340 (McKinney 1988) (the New York counterpart to §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2).

The Court in this instance declines to "lift the continuous treatment concept from its narrow origin of personal services rendered by a professional defendant to a lay patient or client, and apply it generally to the law of commercial sales." *Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737, 746 (2d Cir.1979). Without detracting in any way from the métier of art dealers, or suggesting that they are not professionals in the common understanding of the term, the continuous treatment doctrine definition of professional, like its counterpart under the Donnelly Act, was never intended to extend to all "professions." The relationship between an art gallery and the purchaser of a work of art is not analogous to the doctor-patient relationship. Although it is true that defendant Spanierman knew more about art than plaintiffs, who allegedly relied on Spanierman's expertise, the continuous treatment doctrine does not apply to their relationship. The trust reposed in an art dealer is a business trust as contrasted with a professional trust. *See Flora's Card Shop, Inc. v. Paul Krantz & Co.,* 111 Misc.2d 907, 445 N.Y.S.2d 392 (1981). The piece of art, once sold, is available to the buyer and following up on a claim is not beyond the experience of a businessman. It is indulging in a fiction to assert that the art dealer is continuing to treat the original condition with respect to which he has allegedly been guilty of malpractice. Once the art work is sold and the loss has occurred, there is nothing the art dealer or anyone else can do to remedy the situation. Therefore, the cause of action accrued and the breach occurred on December 20, 1968, and plaintiffs' cause of action for professional negligence is time barred.

### 4. *Negligent Misrepresentation*

■ Plaintiffs additionally assert a claim for negligent misrepresentation. While New York law recognizes that "generally there is no liability for words negligently spoken ... there is an exception when the parties relationship suggests a closer degree of trust and reliance than that of the ordinary buyer and seller." *American Protein Corp. v. AB Volvo,* 844 F.2d 56 (2d

Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988) (*citing Coolite Corp. v. American Cyanamid Co.,* 52 A.D.2d 486, 488, 384 N.Y.S.2d 808, 811 (1st Dep't 1976)). A cause of action for negligent misrepresentation can only be supported if there is a special relationship between the parties greater than the ordinary buyerseller relationship. *Dorsey Products Corp. v. United States Rubber Co.,* 21 A.D.2d 866, 867, 251 N.Y.S.2d 311, 313 (1st Dep't 1964) (*citing International Products Co. v. Erie R.R. Co.,* 244 N.Y. 331, 155 N.E. 662, *cert. denied,* 275 U.S. 527, 48 S.Ct. 20, 72 L.Ed. 408 (1927)). A contractual relationship alone is insufficient to sustain a claim for negligent misrepresentation. *See Accusystems, Inc. v. Honeywell Information Systems,* 580 F.Supp. 474 (S.D.N.Y.1984) (buyer of computer software could not maintain cause of action for negligent misrepresentation); *see also Daniel v. Dow Jones & Co., Inc.,* 137 Misc.2d 94, 520 N.Y.S.2d 334 (N.Y.Civ. Ct.1987) (despite contract with news service, plaintiff did not have special relationship). In defining the special relationship necessary to maintain a cause of action for negligent misrepresentation involving goods, the relationship "implying a closer degree of trust" is generally a previous or continuing relationship between the parties. *See, e.g., Coolite Corp. v. American Cyanamid Co.,* 52 A.D.2d 486, 384 N.Y.S. 2d 808 (1st Dep't 1976) (sales contract involving an ongoing distributorship). This limitation on the universe of permissible plaintiffs is necessary to prevent imposing a duty of reasonable care on all sellers, enforceable by any member of an indeterminate class of buyers.

In the present case, plaintiffs have simply alleged that plaintiffs purchased the Painting from Spanierman. This is merely a contractual relationship, insufficient to sustain a cause of action for negligent misrepresentation. Nor can the appraisals of the Painting create the special relationship necessary to maintain a cause of action for negligent misrepresentation. The appraisals were contracted for and conducted after the sale of the Painting and were not part

of the sale at issue. These appraisals were completely separate transactions between Spanierman and the Rosens which have no bearing on the relationship between the parties at the relevant time, that is, when the alleged negligent misrepresentations were made. Consequently, plaintiffs have failed to demonstrate that there was a special relationship between the parties at the time any representations were allegedly made. Accordingly, defendant's motion for summary judgment on plaintiffs' claim for negligent misrepresentation is granted.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment, pursuant to Rule 56(c), is granted.

SO ORDERED.