OPINION OF THE COURT
Edgar G. Walker, J.
In June 1998 plaintiff commenced this action against defendant insurance brokers alleging causes of action for negligence, breach of contract and fraud. Defendants have moved to amend their answer to add an affirmative defense based on the Statute of Limitations and, upon amendment, to dismiss the complaint based on that defense. Plaintiff does not oppose the motion to amend and that motion is hereby granted. (CPLR 3025 [b].)
It is now established that an action against an insurance broker, whether the theory alleged is negligence or breach of contract, is a malpractice action, governed by the three-year Statute of Limitations set forth in CPLR 214 (6). (Chase Scientific Research v NIA Group, 268 AD2d 115 [2d Dept 2000].) The novel question raised by this case is whether the “continuous treatment” doctrine is applicable, in general, to actions against insurance brokers and, in particular, to this case.
All parties agree that plaintiff’s relationship with the defendants began in 1971 when he purchased a medical insurance policy through the defendants. Over time, he purchased two additional policies through the defendants. In October 1995 the plaintiff underwent bypass surgery, incurring hospital bills in excess of $60,000. The insurance carrier denied plaintiff’s claims in excess of $10,000 as being in excess of the policy limits.
Plaintiff claims that sometime between 197 i and 1995 he requested that his “basic” policy be upgraded to a “major” policy which would have covered all his expenses. This is denied by defendants. However, plaintiff has submitted documentation that on one of plaintiff’s policies, beginning in July 1985 and continuing until January 1996, the defendants billed and plaintiff paid a 50% increase in the premium (from $99.60 per quarter to $148.90 per quarter). At the same time, the billing from the insurance carrier to the defendants for the policy *606 actually decreased. The carrier determined that defendants overbilled the plaintiff in excess of $3,000 for this period. Additionally, during this period, the bills sent by defendants to plaintiff show coverage for both a “Basic Hospital Plan” and a “Major Hospital Plan.”
Defendants contend that, if in fact plaintiff requested the increased coverage, any cause of action would have accrued at the time the request was made and is, thus, barred by the Statute of Limitations. Plaintiff contends that it was only after the claims stemming from his October 1995 surgery were denied that he discovered defendants had not, in fact, obtained the increased coverage for him and that the statute did not begin to run until then.
With respect to the malpractice causes of action, unless the “continuous treatment” doctrine serves to toll the running of the statute, these claims would be barred. Although originally applied in medical malpractice cases (Borgia v City of New York, 12 NY2d 151), the doctrine has since been applied to suits against other professionals. (Siegel v Kranis, 29 AD2d 477 [lawyers]; Wilkin v Dana R. Pickup & Co., 74 Misc 2d 1025 [accountants]; County of Broome v Vincent J. Smith, Inc., 78 Misc 2d 889 [architects].)
National Life Ins. Co. v Hall & Co. (67 NY2d 1021) involved a malpractice action against an insurance broker. While under the facts presented in that case, the Court of Appeals declined to apply the continuous treatment doctrine, it was implicit in the opinion that the doctrine could be applied to insurance brokers under different factual circumstances.
In National Life (supra), plaintiff alleged that the defendant insurance broker, as to a single claim, failed timely to notify two insurance companies of plaintiff’s claim, resulting in denial of the claim. The Court stated:
“There is no basis for application of the continuous treatment doctrine inasmuch as this case does not involve an uninterrupted course of reliance and services related to the particular duty breached.” (67 NY2d, at 1023.)
In this case, the plaintiff does allege exactly such an uninterrupted course of reliance and services. Every quarter, over the course of more than 10 years, defendants sent plaintiff bills for policies at an increased premium for what appeared to be increased coverage.
As with other professionals, acts of malpractice by an insurance broker may not be readily apparent. An insurance broker’s *607 client is hardly in a position to understand the intricacies of different insurance policies or whether the necessary steps to obtain the desired coverage have been taken. As was stated in County of Broome v Vincent J. Smith, Inc. (supra), with respect to architectural malpractice:
“Fairness and justice dictate that a cause of action of this nature accrue only after the professional relationship has been terminated so as to afford the client an opportunity, unhampered by possible concealment, delay or unintended misguidance by the architect, to discover any possible acts or omissions constituting malpractice.” (78 Misc 2d, at 893.)
In this case, it may be that concealment, delay and misguidance, unintentional or otherwise, prevented plaintiff from discovering acts and/or omissions constituting malpractice on the part of defendants. Accordingly, the motion to dismiss the causes of action for malpractice is denied.
With respect to the cause of action for fraud, the action must have been commenced within six years or within two years from the time plaintiff discovered or should with reasonable diligence have discovered the fraud, whichever is later. (CPLR 213 [8]; 203 [g].) Defendants claim that plaintiff knew or should have known that his coverage was not upgraded when he received a copy of the policy in 1991, which plaintiff claims he did not read. Defendants cite Brownstein v Travelers Cos. (235 AD2d 811) for the proposition that plaintiff is conclusively presumed to know the policy’s contents. However, as explicitly stated in Brownstein, this presumption applies only “ ‘in the absence of fraud or other wrongful act on the part of the other contracting party.’ ” (235 AD2d, at 813.) The presumption is, by its own terms, inapplicable to a cause of action for fraud. Defendants’ quoting only a portion of the sentence from the opinion is as misleading, intentionally or unintentionally, as the bills they sent to plaintiff.
The quarterly bills sent to plaintiff, beginning in July 1985, charging increased premiums for both “basic” and “major” coverage, could reasonably have led plaintiff to believe, as he alleges, that defendants had complied with his request to upgrade his coverage. At the very least, it raises an issue of fact which must be resolved at trial. Furthermore, the fraud, as alleged, was of a continuing nature, perpetuated each time *608 defendants billed plaintiff over a period of 10 years. The motion to dismiss the cause of action for fraud is, therefore, denied.